Joseph **GOULET**, Plaintiff and Respondent,

v.

Eugene **O'KEEFFE**, Defendant and
Appellant.

No. 7601.

Supreme Court of North Dakota.

July 9, 1957.

Hubert S. Cayley, Walhalla, Arthur W.
Stokes, of Day, Stokes, Vaaler & Gillig,
Grand Forks, for plaintiff.

J. Gerald Nilles of Nilles, Oehlert &
Nilles, Fargo, William T. Depuy, of Depuy
& Fair, Grafton, Francis J. Magill, Fargo,
for defendant.

SATHRE, Judge.

This is an action brought by the plain-
tiff, a farm laborer, against the defendant,
his employer, a farmer in Pembina County,
North Dakota. The plaintiff had been
employed by the defendant as a farm
laborer for a period of twelve or thirteen
years. The farm of the defendant was what
is called a mechanized farm. That is
tractors of different types were used as
the power in operating the various kinds
of farm machinery. In his work for the
defendant the plaintiff had operated various

types of tractors used upon the farm. Certain parts of the defendant's farm were covered with brush and trees which had to be uprooted and removed before the land could be prepared for farm cultivation. The complaint alleges that on the 4th day of November 1952 the plaintiff was engaged in certain hazardous work at the direction of the defendant which work consisted of clearing timber and brush from a part of defendant's land. That the defendant provided the plaintiff with a tractor with a bulldozer blade for the purpose of moving uprooted trees and brush into heaps to be later burned. The complaint further alleges that it was the duty of the defendant to provide safe, suitable and sufficient equipment and helpers for the work to be done because such work was hazardous to life and limb to those engaged therein to a much greater extent than ordinary farm work; that the said defendant negligently and carelessly failed to provide the proper equipment and necessary safety devices and carelessly failed to give proper instructions to the plaintiff, as to the hazards connected with the work to be done by him; that as a direct result of the defendant's careless and negligent breach of his duty a tree which the plaintiff was attempting to remove rolled and fell upon the plaintiff and severely injured his arm and hand resulting in great pain and suffering and permanently disabling the said arm and hand to the plaintiff's great damage in that he has ever since been unable to perform the work by which he made his living or any work whatsoever, and that said disability would continue for the remainder of his life. Plaintiff then demands damages for the expense of medical treatment for loss of wages incurred to date, for future loss of wages, and for pain and suffering.

The defendant answered admitting that he employed the plaintiff on and before November 4, 1952; but he denies specifically that the equipment consisting of a tractor with dozer blade was in any way inadequate or dangerous and denied that the same was not equipped with necessary safety devices. Defendant further alleges that if there were any hazards or dangers in connection with the work which the plaintiff undertook to do that the risks connected therewith were the ordinary risks incidental to said employment and that the defendant knew or should have known of said hazards and risks and assumed the same. The answer further alleges that if the accident occurred as alleged in plaintiff's complaint, that it was proximately and solely caused by the negligence and carelessness of the plaintiff and that such negligence contributed thereto.

The case was tried to the court and a jury in the city of Cavalier in Pembina County, North Dakota. The trial resulted in a verdict for the plaintiff in the sum of $25,000.

At the close of plaintiff's case the defendant moved for a directed verdict for a dismissal of plaintiff's action upon the grounds that the plaintiff had wholly failed to prove any actionable negligence on the part of the defendant; that the evidence showed as a matter of law that if there was any risk or hazard in connection with the work the plaintiff had been doing such risk or hazard was assumed by the plaintiff and that the evidence conclusively showed that the accident and injury resulting therefrom was proximately caused by the contributory negligence of the plaintiff. The motion was denied. At the close of all of the evidence the defendant moved for a directed verdict for the dismissal of the plaintiff's action upon practically the same grounds upon which his motion was made at the close of plaintiff's case.

The motion was denied and the case was submitted to the jury and a verdict was returned for the plaintiff. Thereafter and within ten days after rendition of the verdict the defendant moved for judgment notwithstanding the verdict or in the

alternative for a new trial. The motion was denied and the defendant appealed in accordance with Section 28–1510, NDRC 1943 as amended by Chapter 204, S.L.N.D. 1951 which provides:

"In denying a motion for a directed verdict the court shall be deemed to have submitted the action to the jury subject to a later determination of the questions of law raised by the motion. Within ten days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment notwithstanding the verdict entered in accordance with his motion for a directed verdict. * * *"

The defendant having appealed from the order of the trial court denying his motion for judgment notwithstanding the verdict, it will be necessary to examine the evidence as to its sufficiency to support the verdict. The defendant assigns numerous errors, which may be stated as follows:

1. That the verdict of the jury is against the evidence and the law, and that the plaintiff has wholly failed to show or prove any negligence on the part of the defendant which proximately caused the accident and injury of which the plaintiff complains.

2. That the undisputed evidence shows affirmatively that the plaintiff assumed the risk and hazard of the employment in which he was engaged at the time of the accident, and that the assumed risk and hazard, if any, were the cause of the accident.

The acts of negligence of the defendant alleged by the plaintiff are as follows, and will be considered in the order stated:

Failure to furnish additional helpers in and about the place where plaintiff was injured.

Failure to provide guards as a safety device upon the tractor plaintiff was operating at the time of the accident.

Failure to provide a larger and more powerful tractor for the work plaintiff was doing.

Failure to give plaintiff proper instructions as to the hazards of the work in which he was engaged.

With reference to the alleged failure of the defendant to furnish helpers for the plaintiff in operating the tractor, there is no evidence whatsoever in the record that such helpers were needed or that it was the custom or practice in the community for the operators of tractors to have the assistance of helpers. Nor is there any evidence or showing in the record as to the kind of assistance a helper could give an operator of a tractor.

It is next contended that the defendant was negligent in failing to provide guards as a safety device upon the tractor that plaintiff was operating at the time of the accident.

One Dewey Callaway, a witness for the plaintiff, testified in substance as follows:

He was employed by a contractor who was engaged in building roads, brushing and timber work, curbing and road work. He operated tractors with dozers and scrapers. He had operated tractors for eleven years and during the last seven years he operated a tractor to which was attached a bulldozer. The bulldozer was used in brushing and pushing dirt and grubbing trees, and piling them into windrows. He had had no experience with Allis Chalmers HD 7 tractors, of the type that was used by the plaintiff in this case. He stated that the Allis Chalmers tractor that was operated by the plaintiff was too light for the work that the plaintiff was doing on the day of the accident. With reference to the use of guards as safety device on tractors he stated that he

knew that contractors used such safety devices in that community. The guards he stated consisted of four posts, one on each corner and well braced. The guards were of more importance on smaller tractors than on a larger tractor. He stated further that he knew there were some contractors who used tractors without guards but the tractor he was using always had the protecting guards attached thereto. He stated further that he did not know whether contractors engaged in brushing and uprooting trees used Allis Chalmers HD 7 tractors.

There is absolutely no evidence in the record that tractors came from the factory equipped with these guards, nor is there any evidence as to where these guards could be purchased or procured.

Jack Mayo testifying for the defendant stated that he was a contractor engaged in brushing and knocking down trees and piling them into windrows with tractors equipped with bulldozers. He had been doing such work since 1946. He never used guards on his tractors in his work, and stated that guards were not standard equipment on tractors. On cross-examination he stated that there was no difference between smaller tractors of 60 H.P. like the Allis Chalmers HD 7, and larger tractors, so far as the safety factor was concerned, but contractors used the larger tractors.

It is next claimed that the defendant was careless in not providing a larger tractor than the Allis Chalmers HD 7 for the work that the plaintiff was doing when he was injured.

Alva Tetrault testifying for the defendant stated that he was a farmer and was the owner of a 45 H.P. caterpillar crawler tractor and that it was smaller than the Allis Chalmers HD 7 tractor operated by the plaintiff in this case. He testified further that he used his tractor in felling trees eight to ten inches in diameter and that it was adequate for such work. It was not equipped with guards. He had owned five or six tractors but they were not equipped with guards, and guards were not standard equipment. He stated further that it was not a custom among farmers to use guards on a crawler type tractor when used for brushing and moving trees.

According to the testimony of the plaintiff himself, he had operated tractors on the defendant's farm during the ten or eleven years that he had been employed by the defendant. He had operated the HD 7 Allis Chalmers tractor since it was purchased by the defendant in 1949. He stated that he was familiar with the use and handling of the several levers and clutches, and from his own testimony it appears that he was an experienced operator of tractors. He said the first time he operated the Allis Chalmers tractor was in the fall of 1951 near Olga where he used it in piling brush and poplar trees in windrows or pushed them over a bank. The size of the trees he moved he estimated to be between three to five inches in diameter. In the spring of 1952 he used the Allis Chalmers tractor for about one week in moving brush and small trees on the farm of the defendant Mr. O'Keeffe. He did not know how much ground he cleared but he had worked at it about one week. The next work he did with the Allis Chalmers tractor was to push some stumps that had been sawed off. The summer before the accident he had cleared up a field by pushing trees with the Allis Chalmers tractor and he said that there were a few big ones in the field. The evidence shows that the field upon which the plaintiff was working when he was injured was approximately eighteen acres. He had worked on this field, brushing and removing trees, during the month of October and on about October 25th work was laid off on account of unfavorable weather. At that time approximately two-thirds of the field had been cleared. The week following October 25th the plaintiff asked the de-

fendant for an advance payment and offered to work if there was any work he could do. The defendant replied that "We could clean up some of this land". The plaintiff said that he was willing to do the work and on the 3rd day of November he started work clearing the remainder of the field where he had worked until October 25th. The plaintiff went to work on the morning of the accident as usual. He claims that he went to work as directed by the defendant because he was afraid that if he did not go to work the defendant would discharge him. There is absolutely no evidence in the record that the defendant at any time had threatened or even suggested that he would discharge the plaintiff.

The defendant testified that he had kept a record of the number of hours the HD 7 Allis Chalmers tractor had been used and that the total number was thirty-two hundred hours, and that the plaintiff had operated the tractor for approximately twenty-two hundred hours.

With reference to plaintiff's claim that the defendant failed to give him proper instructions for operating the tractor, it is difficult upon the record before us to understand what instructions should have been given the plaintiff. The defendant testified that as a rule he instructed the plaintiff to be careful when operating tractors.

The factual situation in the instant case may be summarized as follows:

The plaintiff was 41 years of age at the time of the trial. He was illiterate, that is, could not read or write. He was married and lived at Walhalla with his wife and eight children. He had been in the employ of the defendant as a farm laborer for ten or eleven years. Tractors were used upon the defendant's farm in the farming operations and plaintiff operated the different types of tractors owned by the defendant. The Allis Chalmers HD 7 which the plaintiff operated when he was injured was purchased by defendant in 1949, and plaintiff had operated it in doing the various kinds of work which were usually done on the defendant's farm, including what is known as brushing and moving trees from wooded areas. On November 4, 1952 the plaintiff seriously injured his left arm in moving a certain forked tree, one branch of which came over the top of the tractor. He was alone at the time of the accident. He brought this action against the defendant for damages resulting from his injury, including medical and hospital expenses, loss of time, pain and suffering and permanent disability of his left arm. He claims that his injuries were caused by the negligence of the defendant. We have reviewed and considered the alleged acts of negligence complained of by the plaintiff.

It is established by the evidence that the plaintiff had operated the tractor involved here two-thirds of the time that it had been in use. The plaintiff was an experienced operator of tractors and had operated the Allis Chalmers tractor in doing various kinds of work including brushing and removing trees. The work that he was doing on the day that he was injured was not new work but according to his own testimony was the kind of work that he had done only a few days before the accident in which he was injured. It clearly appears from the undisputed facts that plaintiff had considerable experience in operating tractors, and particularly in operating the Allis Chalmers tractor involved here.

The rule is well settled that questions of negligence, contributory and proximate cause, are questions of fact for the jury in a personal injury action, unless evidence is such that reasonable men can draw but one conclusion therefrom. Leonard v. North Dakota Co-operative Wool Marketing Ass'n, 72 N.D. 310, 6 N.W.2d 576; Ekren v. Minneapolis, St. Paul & S. St. Ry. Co., N.D. 61 N.W.2d 193; Fern v. Great Northern Railway Co., 53 N.D. 543, 207 N.W. 39; Cunningham v. Great Northern Railway Co., 73 N.D. 315, 14 N.W.2d 753.

We conclude upon the record and the evidence in the instant case, that reasonable men, acting fairly and impartially, could arrive at but one conclusion, that is, that the injury sustained by the plaintiff was not caused by any negligence on the part of the defendant, and that as a matter of law the defendant was entitled to judgment for dismissal of the action, notwithstanding the verdict.

Since we have held that there is no evidence in the record of actionable negligence on the part of the defendant it will not be necessary to consider the question of assumption of risk and other specifications of error assigned by defendant.

The judgment of the district court is reversed and the case remanded with directions to enter judgment for dismissal of the action.

GRIMSON, C. J., and JOHNSON, BURKE and MORRIS, JJ., concur.