No. 19,229.

Henry C. Oberst *v.* Floy Mays, Treasurer of
Kiowa County, et al.

(365 P. [2d] 902)

Decided October 30, 1961.

Messrs. GORDON and GORDON, Mr. JOHN C. HOVER, JR., for plaintiff in error.

Mr. CARL M. SHINN, for defendant in error Floy Mays as Treasurer of the County of Kiowa, Colorado.

Mr. JOHN J. LEFFERDINK, for defendants in error P. L. Reed, Samuel R. Rehm and R. O. Scott, as County Commissioners of Kiowa County, Colorado.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. Clifton A. Flowers, Assistant, for defendant in error Paul W. Swisher, State Commissioner of Agriculture of the State of Colorado.

*En Banc.*

Mr. JUSTICE MOORE delivered the opinion of the Court.

WE will refer to the parties as they appeared in the trial court, plaintiff in error, Henry C. Oberst, as plaintiff, and defendants in error as defendants or by name. The action was brought by plaintiff to enjoin defendants "from attempting to enforce" a tax sale certificate as a general lien upon certain farm lands owned by him. In his prayer he sought an adjudication that the tax sale certificate mentioned in the complaint was null and void. The controversy arose out of certain actions of defendants performed by them under the authority of the Soil Erosion-Dust Blowing Act of 1954 (C.R.S. '53, 128-3-1, et seq.). The case was tried to the court and findings of fact and judgment were entered in favor of defendants.

Pertinent facts are as follows: Plaintiff, a resident of Oklahoma, owned and farmed two sections of land in Kiowa County, Colorado. On March 4, 1955, a written complaint was filed with the Board of County Commissioners of that county in which it was asserted that plaintiff's land was in a "blowing" condition and needed to be worked at once; that the commissioners thereupon caused the land to be inspected; that the inspector recommended that the land be "chiselled" by working it with 4-inch shovels 5 inches deep and 44 inches apart; that by order of the commissioners under date of March 7, 1955, the county clerk sent an "Order to Perform Soil Treatment to Prevent Soil Erosion" to plaintiff, addressed to him at his residence as disclosed by the records of the county assessor; that this order was received by plaintiff's wife on March 12, 1955; that the said order set March 14, 1955, as the last date upon which the work should be started and March 30, 1955, as the date upon which it should be completed; that the said order further informed plaintiff that unless the work was commenced within the specified time the State of Colorado would perform the work, assess the cost thereof to plaintiff, and impose a lien on the land and collect the amount due for the said work, in the same manner as the ad valorem taxes on real property are collected; that upon failure of plaintiff to perform the work the commissioners entered into an agreement with a private contractor to perform the work which was commenced March 17, 1955; that after working about 878 acres the private contractor was ordered off the land by plaintiff; that the commissioners determined that plaintiff's land had been benefited by the work which was done on it and assessed $1,097.50 as the cost thereof; that plaintiff was notified of this assessment and upon his failure to pay this sum the treasurer duly issued a certificate of purchase to Kiowa county at the tax sale held in the county for unpaid taxes for the year 1955. The date of the certificate issued to the county was December 10, 1956.

Plaintiff's complaint was filed December 3, 1956. He sought a temporary restraining order to prevent issuance of the certificate of purchase but his request was denied. The issues were framed and raised questions concerning the validity of the assessment, and the cause proceeded to judgment on May 29, 1957, with the result above noted.

A pertinent provision of the statute reads as follows: (C.R.S. '53, 128-3-6 Supp.)

"Any landowner aggrieved at the amount of the assessment against his land may bring an action in the district court of the county in which the land is situated to test the validity of the assessment or to enjoin its collection, but such action must be brought within thirty days after the assessment is made and the copy of the resolution of the board is mailed as hereinabove provided, and cannot be brought thereafter. * * * "

Admittedly the action was not commenced within the thirty day period prescribed.

The findings and decree of the trial court contained the following:

" * * * And the Court

"DOTH FURTHER FIND that this is an action to test the constitutionality of said above mentioned act. It is therefore,

"ORDERED ADJUDGED AND DECREED that defendants' Motion to dismiss by reason of the plaintiff's failure to seek judicial review of the assessment against his land within 30 days after the assessment was made and copy of the resolution of the said Board of County Commissioners was mailed as provided by Chapter 128, Article 3, Section 6, 1953 CRS, as Amended, be, and the same is hereby granted. It is further

"ORDERED, ADJUDGED AND DECREED that the said Chapter 128, Article 3 of the 1953 CRS As Amended, does not violate the constitution of the State of Colorado as alleged in plaintiff's complaint and the Act in these respects is therefore constitutional."

In essence, counsel for plaintiff urge two grounds for reversal of the judgment, to-wit: (1) That the assessment against his land was void, and the 30-day statute does not run against a void assessment; (2) that, assuming the validity of the assessment, the short 30-day statute of limitations violates the due process clauses of the state and federal constitutions.

It is argued in support of the point that the assessment was void that due process requires an opportunity to be heard and notice of hearing before one can be deprived of property rights. The statute (128-3-3) provides in pertinent part:

"When the board of county commissioners of any county of the state is advised, in writing, that soil is blowing from any land in the county, and is supplied with a description of such land, or when by reason of such blowing from any land in the county, roads or public property are being damaged, such board is hereby authorized and directed to immediately inspect or cause to be inspected such land. If the board finds that soil is blowing from such land in sufficient quantity to be injurious to adjacent or other land or lands or roads or public property because of soil being blown thereon, or to the public health because of soil being blown into the air, such board shall determine what, if anything, can be done to prevent or materially lessen such blowing of soil from such land. If the board finds such blowing can be prevented or materially lessened by treatment of the soil, such board is further authorized and directed to issue an order to the owner as listed upon the records of the county assessor and to the operator if known to such board, specifying the nature of the treatment required and the extent thereof and the date by which such treatment is to be commenced and the date to be completed. Upon a finding by the board that an emergency exists, notice of such order shall be given by mailing a copy thereof by registered mail addressed to each of the persons to whom the order is directed at the ad-

dress as shown on the records of the county assessor, otherwise service of such order shall be made as provided by the Colorado rules of civil procedure for the service of summons. * * * "

It is apparent from the statute that no notice to the landowner, or opportunity for him to be heard, is provided for in connection with both the abatement and assessment provisions of the Act. The proceedings preliminary to the order of the commissioners directing the landowner to perform specific work upon the land, or to suffer the work to be done by the State of Colorado at the landowner's expense, are all conducted without notice to the owner, and without his participation in any way.

Counsel for plaintiff recognize the rule applicable to cases of extreme emergency and dire need, in which summary abatement of a dangerous condition is permitted under a proper exercise of the police power. It is contended, however, that summary proceedings may be used "only to abate conditions which are nuisances per se," and where an emergency exists. It is contended that blowing dust is not a nuisance per se and a condition which is not a nuisance per se, regardless of legislation declaring it to be such, is not subject to summary abatement. In the instant case it appears that the commissioners found that an emergency existed with respect to dust blowing from plaintiff's land, and this finding was made prior to the time the land was worked.

The statutory declaration of policy (128-3-1) states that:

"Soil erosion caused by wind, and dust storms produced thereby, are recognized and declared to be destructive to the property and natural resources of this state and a menace to the health and well-being of the citizens of the state."

We hold that the conditions allegedly existing on plaintiff's lands were such as to warrant summary abatement in the protection of the "health and well-being of

the citizens of the state." The dust blowing from the lands into the air and upon adjacent property was injurious to the public health and to adjacent property, and constituted a nuisance per se and hence was subject to summary abatement, *City of Denver v. Mullen, et al.,* 7 Colo. 345, 3 Pac. 693.

■ The terms of the statute, providing for service of notice to plaintiff concerning his duty to work the land, and the effect of failure on his part to perform, together with the service of the resolution of assessment, were substantially complied with. The assessment in dispute was not void.

In connection with the assessment made following the work done to abate the blowing condition, it is further contended that due process required a notice to plaintiff and a hearing upon the question as to the amount which should be assessed against the land. As stated in *Londoner v. City and County of Denver,* 210 U.S. 373, 28 Sup. Ct. 708, 52 L. Ed. 1103, it is sufficient to satisfy due process if:

" * * * at some stage of the proceedings before the tax becomes irrevocably fixed, the taxpayer shall have an opportunity to be heard, of which he must have notice, either personal by publication, *or by a law fixing the time and place of the hearing.* * * * " (Emphasis supplied.)

The statute here involved fixes the time (thirty days) within which, and the place (district court) where an aggrieved landowner may bring an action for the purpose of contesting the validity of an assessment after the same has been extended on the assessment rolls. The assessment does not become irrevocably fixed until the time for the landowner's opportunity to be heard thereon by an action brought in the district court has expired. The general rule on this point is also stated in 16A C.J.S. 1052, *Constitutional Law,* Sec. 662, as follows:

" * * * So, where the statute provides that a person aggrieved by the action of the assessors may, within a

designated period, *apply to a court* to have the assessment set aside or corrected, there is no want of due process * * *." (Emphasis supplied.)

■ Counsel for plaintiff argue that even conceding the assessment is not void, the action is not barred by the thirty day statute of limitation. The argument is that due process of law is denied if the period allowed by a statute, for bringing an action, is unreasonably short so as to be arbitrary and capricious. It is the contention that the thirty days provided in this statute is so short as to be unreasonable. With this contention we cannot agree. The legislature is the primary judge of whether the time allowed by a statute is reasonable. Such a determination by the legislature is reviewable by the courts but unless the time fixed by the statute is manifestly so limited as to amount to a denial of justice, the courts will not nullify the limitation fixed by the legislature.

■ In 34 Am. Jur. 31, *Limitation of Actions,* Sec. 24, it is stated, inter alia:

" * * * In determining whether a reasonable time is allowed, the court must consider the circumstances under which the statute is to apply. As to this, no one rule can be laid down for the government of all cases alike. *Each limitation must be separately judged in the light of the circumstances surrounding the class of cases to which it applies, and if the time is reasonable in respect of the class, it will not be adjudged unreasonable merely because it is deemed to operate harshly in some particular or exceptional instance. * * * "* (Emphasis supplied.)

From *Van Diest v. Towle,* 116 Colo. 204, 179 P. (2d) 984, we quote:

"The modern tendency is to look with favor upon statutes of limitation, which are considered wise and beneficent in their purpose and tendency, are looked upon as statutes of repose, and are held to be rules of property vital to the welfare of society (34 Am. Jur., p.

24, §14), and while formerly looked upon with disfavor and strictly construed, the present judicial attitude is that of liberal construction."

We have examined other points presented. No good purpose would be served in discussing them at length. Suffice it to say that we find them without merit.

The judgment is affirmed.