Dr. John W. YARBRO, surviving spouse
of decedent, Geraldine Yarbro,
Petitioner-Appellant,

v.

HILTON HOTELS CORPORATION, De-
fendant and Third-Party Plaintiff,

v.

I.M. PEI, individually, and I.M. Pei & Part-
ners, a partnership, formerly known as
I.M. Pei and Associates, Third-Party De-
fendants-Appellees.

No. 80SA274.

Supreme Court of Colorado,
En Banc.

Dec. 13, 1982.
Rehearing Denied Jan. 10, 1983.

Lutz & Berkowitz, P.C., Stephen N. Berkowitz, Denver, for plaintiff-appellant.

Ellison, Ward & McCrea, Margaret Bates Ellison, Bruce B. McCrea, Denver, for third-party defendants-appellees.

LEE, Justice.

This is an appeal from a summary judgment entered in favor of the third-party defendants, I.M. Pei and I.M. Pei & Partners (Pei). We affirm the judgment.

The appellant, Dr. John W. Yarbro (plaintiff), brought an action against the Hilton Hotels Corporation (Hilton) for the wrongful death of his wife, Dr. Geraldine Yarbro. The plaintiff's claim arose out of events occurring on May 17, 1977, while the Yarbros, who both were oncologists, were attending a medical convention at the Denver

Hilton Hotel. On that day Geraldine Yarbro had presented a paper at the convention, and she was planning another presentation for the following day. At approximately 11:00 p.m., the Yarbros retired to their room on the fifteenth floor of the hotel after attending a cocktail party. By deposition the plaintiff testified that he was removing his coat with his back toward his wife when he heard a noise that caused him to turn. He saw his wife falling through the glass of the hotel room window to her death fifteen floors below. The death was ruled accidental.

The plaintiff sought to recover damages in the amount of $4,000,000, alleging that his wife's death was caused by her losing her balance or tripping over a radiator located at the base of the window, and falling through the window of the room. The windows were 78.25 inches tall and 21.5 inches wide, with a ⅛ inch pane of glass set in pre-cast concrete mullions. There were no guards, screens, or other protective devices attached to the window. The radiator protruded 15 inches into the room, and the bed was placed close to the window, leaving little room to walk between the two. The plaintiff claimed that his wife's foot or leg came in contact with the radiator so as to cause her to lose her balance and fall into the windowpane, which could not withstand the impact.

Hilton impleaded I.M. Pei and I.M. Pei & Partners, professional architects who had provided design services for the building prior to its completion in 1960. Plaintiff then filed a complaint against Pei, alleging that the death was a result of the "negligently designed room configuration, the in-adequate thickness of the glass installed therein, and the lack of adequate safeguards." Pei responded with a motion for summary judgment raising as a defense section 13–80–127, C.R.S.1973, which bars suit against an architect for "damages for injury to person or property caused by the design [or] planning ... of any improvement to real property" brought "more than ten years after the substantial completion of the improvement to the real property ...." Section 13–80–127(1), C.R.S.1973.[1] The wrongful death action was commenced nineteen years after the substantial completion of the hotel in 1960. It is undisputed that neither Pei nor Pei & Partners had any involvement with the hotel after that date. The trial court held that the statute was valid and controlling in the posture of the case, and accordingly granted summary judgment in favor of Pei.[2]

The plaintiff asserts that section 13–80–127 is void because it violates the constitutional provisions guaranteeing due process and equal protection, and also *Colo. Const.* art. V, sec. 25, which prohibits special legislation. He also contends that Pei does not come within the provisions of the statute since he was not a licensed architect in the State of Colorado until July of 1959, although design services had been performed starting in 1955.

■ The principal question for our review is whether the statute granting immunity from suit to architects ten years following substantial completion of the building is constitutional. We note that the statute is presumed to be constitutional and the plaintiff bears the burden of proving

1. Section 13–80–127(1) and (2), C.R.S.1973, which was applicable to this case provides in pertinent part as follows:
 "**13–80–127. Limitation of actions against architects, contractors, engineers, and inspectors.** (1) All actions against any architect, contractor, engineer, or inspector brought to recover damages for injury to person or property caused by the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within two years after the claim for relief arises, and not thereafter, but in no case shall such an action be brought more than ten years after the substantial completion of the improvement to the real property, except as provided in subsection (2) of this section.
 "(2) In case such injury to person or property occurs during the tenth year after substantial completion of the improvement to real property, said action shall be brought within one year after the date upon which said injury occurred."
 This statute was subsequently amended.

2. Hilton is not a party to this appeal.

unconstitutionality beyond a reasonable doubt. *People v. Smith*, 620 P.2d 232 (Colo. 1980); *Zaba v. Motor Vehicle Div.*, 183 Colo. 335, 516 P.2d 634 (1973); section 2–4–201, C.R.S.1973 (1980 Repl.Vol. 1B). We find that the plaintiff has failed to carry the burden of proof for the reasons hereinafter set forth.

### I.

The appellant first argues that this statute denies due process since it does not rationally further any legitimate state objective. *See, e.g., Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). We do not agree. Limiting liability of an architect, and others similarly situated, by a reasonable means may indeed serve a public purpose. We agree with the statement of the Supreme Court of New Jersey speaking in *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662 (1972), as follows:

> "There comes a time when [the defendant] ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not to be called on to resist a claim when 'evidence has been lost, memories have faded, and witnesses have disappeared.' "

61 N.J. at 201, 293 A.2d at 667–668 (1972) quoting *Developments in the Law: Statutes of Limitations*, 63 *Harv.L.Rev.* 1177, 1185 (1950). This court has previously upheld similar statutes of repose such as section 13–80–105, C.R.S.1973, which limits the period in which malpractice actions may be brought against physicians. As we pointed out in *Mishek v. Stanton*, 616 P.2d 135, 138 (Colo.1980):

> "The general rule is that a statute of limitations ... does not violate due process 'unless the time fixed by the statute is manifestly so limited as to amount to a

denial of justice .... The legislature is the primary judge of whether the time allowed ... is reasonable.' *Oberst v. Mays*, 148 Colo. 285, 292, 365 P.2d 902, 905." (citations omitted).

Section 13–80–127, C.R.S.1973, appears to be a legislative response to recent trends in tort law which have extended architect liability, even after completion of the building and acceptance by the owner, to third parties injured by construction and design defects but with whom they have no contractual relationship. *See, e.g., Inman v. Binghamton Housing Authority*, 3 N.Y.2d 137, 143 N.E.2d 895, 164 N.Y.S.2d 699 (1957); *Montijo v. Swift*, 219 Cal.App.2d 351, 33 Cal.Rptr. 133 (1963); *compare, MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916); *see also,* Brown, *Building Contractors' Liability After Completion and Acceptance*, 16 *Clev.-Mar.L.Rev.* 193 (1967); Comment, *Limitation of Action Statutes for Architects and Builders*, 18 *Cath.U.L.Rev.* 361 (1969). Since construction projects generally have expected useful lives of many years or decades, the possibilities for long-term liability for the professional architect or design engineer are enormous. Thus, as a matter of policy, the General Assembly has limited the extended exposure to liability by barring suits against the architects which are brought more than ten years after substantial completion of the building. Section 13–80–127, C.R.S.1973.

Similarly, a majority of the states have acted to create time limits on suits against architects for design problems.[3] Such statutes of repose differ from other statutes of limitation since they may bar a cause of action before it accrues. The legislative judgment is that construction or design defects are likely to be discovered within a reasonable period after substantial completion of the building.[4] Thus, after that time,

---

**3.** One commentator reports that at least forty-three states and the District of Columbia have enacted statutes limiting the time within which suits against architects must be brought. *Collins, Limitations of Action Statutes for Architects and Builders—An Examination of Constitutionality* 29 Fed'n. Ins. Coun. Q. 41 (1978).

**4.** A 1967 random study of 570 lawsuits brought against architects indicated that the vast majority of suits for design problems are brought against architects within the first seven years after completion of the building. Over 99% of claims had been brought within ten years after completion. *Hearings on H.R. 6527, H.R. 6678, and H.R. 11544 Before Subcomm. 1 of the*

the architect is relieved of responsibility and the owner, tenant, or one in control of the building becomes exclusively liable for injuries resulting from building defects, since such injuries may be attributed to and result from improper maintenance or failure to repair, rather than inherent design defects in the original construction. *See, Howell v. Burk,* 90 N.M. 688, 568 P.2d 214 (1977). In most cases, it is not likely that the architect or contractor who participated in initial design would be a participant in the ownership and control of the building or its maintenance for over ten years.

We hold that it was not unreasonable for the General Assembly to limit to ten years the period in which suits may be commenced against architects for design defects, in view of the legislative intent to avoid stale claims and the likelihood that most types of defects would reasonably be discovered within ten years of substantial completion. *See Smith v. Allen-Bradley Co.,* 371 F.Supp. 698 (W.D.Va.1974). Since the statute is rationally related to a permissible state objective, it does not violate due process.

This statute was enacted in 1969, nine years after the substantial completion of construction and the issuance of the certificate of occupancy in 1960 in this case. Geraldine Yarbro died in 1977, eight years after the statute came into effect, and seventeen years after the substantial completion of the Hilton Hotel. The alleged design defect was not discovered until 1977, and by that time the architect had become statutorily immune from suit.[5] The plaintiff had no claim and thus no vested right to sue at the time the immunity became effective and he therefore cannot assert that his property was taken without due process. *Freezer Storage, Inc. v. Armstrong Cork Co.,* 234 Pa.Super. 441, 341 A.2d 184 (1975), *aff'd* 476 Pa. 270, 382 A.2d 715 (1978); *Joseph v. Burns,* 260 Or. 493, 491 P.2d 203 (1971).

As stated in *Joseph v. Burns, supra,* 260 Or. at 503, 491 P.2d at 207–208:

"Assuming that the effect of [the statute] is to abolish causes of action in tort where the damage does not result within ten years after the negligent acts or omissions complained of, we see nothing unconstitutional in so doing. . . .

"It has always been considered a proper function of legislatures to limit the availability of causes of action by the use of statutes of limitation so long as it is done for the purpose of protecting a recognized public interest. It is in the interest of the public that there be a definite end to the possibility of future litigation resulting from past actions. It is a permissible constitutional legislative function to balance the possibility of outlawing legitimate claims against the public need that at some definite time there must be an end to potential litigation."

We hold that the statute enacted at section 13–80–127, C.R.S.1973, does not violate due process. We note that several other states have reached similar conclusions with regard to their statutes of limitations for architects. *See, e.g., Smith v. Allen-Bradley Co.,* 371 F.Supp. 698 (W.D. Va.1974); *Carter v. Hartenstein,* 248 Ark. 1172, 455 S.W.2d 918 (1970); *Burmaster v. Gravity Drainage District No. 2,* 366 So.2d 1381 (La.1978); *Klein v. Catalano,* 386 Mass. 701, 437 N.E.2d 514 (1982); *Reeves v. Ille*

*House Committee on the District of Columbia, 90th Cong., 1st Sess. 28 (1967). Collins, Limitation of Action Statutes for Architects and Builders—An Examination of Constitutionality, supra,* 47–48 and n. 29.

5. After such a long delay, as in this case, the proof problems in defending a negligence action of this kind would be very difficult to surmount. For example, the standards for architectural performance as well as building codes in effect could have changed significantly in the intervening years, and it would be difficult to establish the standard of care of a reasonably prudent architect at the time the design services were rendered in the late 1950's. *See Howell v. Burk,* 90 N.M. 688, 568 P.2d 214 (1977). These problems, in our view, support the reasonableness of the legislative action. We are not unmindful of the fact that these delays also impose proof problems on the party asserting liability, but nevertheless the legislature is free to set reasonable restrictions so long as constitutional requirements are met.

*Electric Company,* 170 Mont. 104, 551 P.2d 647 (1976); *Rosenberg v. Town of North Bergen,* 61 N.J. 190, 293 A.2d 662 (1972); *Howell v. Burk,* 90 N.M. 688, 568 P.2d 214 (1977), *cert. denied,* 91 N.M. 3, 569 P.2d 413 (1977); *Freezer Storage, Inc. v. Armstrong Cork Co.,* 234 Pa.Super. 441, 341 A.2d 184 (1975), *aff'd,* 476 Pa. 270, 382 A.2d 715 (1978); *Hill v. Forrest & Cotton, Inc.,* 555 S.W.2d 145 (Tex.Civ.App.1977).

■ Closely related to the due process argument is the plaintiff's challenge to the statute based upon article II, section 6, of the Colorado Constitution, which provides that "courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person . . . ." We hold that this statute does not violate the equal justice provision, because, as we have noted above, it applies to non-vested rights to sue the architect or contractor and to vested rights which are not timely prosecuted. Since the time for filing suit against the architect had lapsed pursuant to the statute prior to the time of the death of Geraldine Yarbro, the cause of action against the architect never arose or vested. *See Vogts v. Guerrette,* 142 Colo. 527, 351 P.2d 851 (1960); *Goldberg v. Musim,* 162 Colo. 461, 427 P.2d 698 (1967); *see also Silver v. Silver,* 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929). Thus we reject this argument as a basis to invalidate the statute.

## II.

The plaintiff also claims the statute violates the equal protection clause and the constitutional prohibition against special legislation. *See U.S. Const.* amend. XIV; *Colo. Const.* art. V, sec. 25.[6] He argues that the statute grants immunity to a certain classification of defendants without a rational basis for denying immunity to others who are similarly situated to architects, contractors, and design engineers. We do not agree.

■ Since no fundamental right or suspect class, such as race, sex, or national origin, is involved here, our scrutiny of the statute need go no further than determining whether the statutory classification is reasonably related to a legitimate state objective. *Friedman v. Rogers,* 440 U.S. 1, 17, 99 S.Ct. 887, 898, 59 L.Ed.2d 100 (1979); *New Orleans v. Duke,* 427 U.S. 297, 303–304, 96 S.Ct. 2513, 2516–2517, 49 L.Ed.2d 511 (1976); *Cudahy Co. v. Ragnar Benson, Inc.,* 514 F.Supp. 1212, 1217 (D.Colo.1981). As we have stated hereinbefore, the statute bears a reasonable relationship to the legislative objective of limiting liability for architects, contractors, engineers, and inspectors whose work on an improvement to real estate generally ends at the time of substantial completion of a project. Among those groups who do not come within the language of the statute are materialmen, owners and occupiers of the improved property. In our view the distinction made between these groups is reasonable, and thus the statute does not violate equal protection, nor the prohibition against special legislation.

■ A landowner owes a duty of reasonable care to persons coming onto his property. *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971); *Rudolph v. Elder,* 105 Colo. 105, 95 P.2d 827 (1939). Owners and occupiers of improved property have continuing control of the premises and are responsible for repairs and replacements of damaged or dangerous conditions. Architects, contractors, engineers, and inspectors, on the other hand, in most cases do not have continuing control over or involvement with the maintenance of the improvement after its initial construction. As the New Mexico Supreme Court stated in *Howell v. Burk, supra,* refuting a similar challenge to the New Mexico architect immunity statute:

**6.** Article V, section 25, of the Colorado Constitution provides in relevant part as follows:

"Section 25. Special legislation prohibited. The general assembly shall not pass local or special laws in any of the following enumerated cases, that is to say . . . granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever. In all other cases, where a general law can be made applicable no special law shall be enacted."

"Those covered by the statute have no control over the real estate improvement once it is completed and turned over to the owner. The owner or tenant may permit unsafe conditions to develop, or use the premises for a purpose for which it was not designed, or make defective alterations which may appear to be a part of the original construction. *See Grissom v. North American Aviation, Inc.,* 326 F.Supp. 465 (D.C.Fla.1971)." 568 P.2d at 220.

Therefore, the General Assembly could have reasonably concluded that these roles are logically distinguishable. It may also have concluded that an architect should not be held liable indefinitely, based upon the assumption that most design defects would be discovered and most claims could be expected to be brought within ten years time after completion. *See supra* note 4.

In addition, materialmen are in a position distinct from the architect, contractor, engineer, or inspector in that the materialman provides manufactured goods and should be held accountable under the general tort rules governing liability for defects in those products. *See* section 13–80–127.5, C.R.S. 1973.

"Suppliers and manufacturers, who typically supply and produce components in large quantities, make standard goods and develop standard processes. They can thus maintain high quality control standards in the controlled environment of the factor. On the other hand, the architect or contractor can pre-test and standardize construction designs and plans only in a limited fashion. In addition, the inspection, supervision and observation of construction by architects and contractors involves individual expertise not susceptible to the quality control standards of the factory."

*Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles,* 366 So.2d 1381, 1386 (La.1978); *See Cudahy Co. v. Ragnar Benson, Inc.,* 514 F.Supp. 1212, 1217 (D.Colo.1981); *Klein v. Catalano,* 386 Mass. 701, 437 N.E.2d 514 (1982); *Freezer Storage, Inc. v. Armstrong Cork Co.,* 476 Pa. 270, 276–277, 382 A.2d 715, 719 (1978).

Accordingly, the tort rationale for product liability does not easily extend to cover the providing of services.

A similar analysis applies to the appellant's argument that the statute is "special legislation" prohibited by *Colo. Const.* art. V, sec. 25. The general rule is that although the legislature may classify and enact statutes, there must be a reasonable basis to support the classification. If there is a distinguishing factor then the General Assembly may properly adopt the classification, even if some inequality may result. *People v. Maxwell,* 162 Colo. 495, 427 P.2d 310 (1967); *Vogts v. Guerrette,* 142 Colo. 527, 351 P.2d 851 (1960). The burden is on the appellant to demonstrate that the classification is arbitrary and unreasonable. A reasonable and nonarbitrary classification, based upon substantial differences which relate to a public purpose, is not precluded by this constitutional provision. *Hale v. City & County of Denver,* 159 Colo. 341, 411 P.2d 332 (1966); *McCarty v. Goldstein,* 151 Colo. 154, 376 P.2d 691 (1962).

As previously discussed, the classification made in this statute is reasonable and not arbitrary.[7] The appellant has failed to prove that the statute is unconstitutional beyond a reasonable doubt.[8]

*O'Brien v. Hazelet & Erdal,* 410 Mich. 1, 18, 299 N.W.2d 336, 342 (1980).

7. The legislature could also have reasonably concluded that a statute limiting liability for architects, engineers, and other design professionals providing desirable services to improvements to real estate, might reasonably encourage innovation and experimentation.

"Innovations are usually accompanied by some unavoidable risk. Design creativity might be stifled if architects and engineers labored under the fear that every untried configuration might have unsuspected flaws that could lead to liability decades later."

8. Appellants have cited the decision in *McClanahan v. American Gilsonite Co.,* 494 F.Supp. 1334 (D.Colo.1980), as persuasive authority that section 13–80–127, C.R.S.1973 is unconstitutional. However, we do not agree with that ruling, which held the section unconstitutional on equal protection and special legislation grounds, for the reasons set forth herein.

### III.

 The plaintiff next argues that even if the statute is not unconstitutional for the foregoing reasons, the architect, Pei, cannot come within the protections of the statute because Pei was not licensed to practice architecture in Colorado at the time the design services were first rendered in 1955–1958. However, Pei did become licensed in Colorado in 1959, before the substantial completion of the hotel and before the certificate of occupancy was issued.

When the work was done on the hotel, Pei and the other appellees were employees of the owner-developer of the hotel in New York, and licensed in that state. There Pei performed design services which were later incorporated in construction drawings signed and sealed by architects licensed in Colorado. Although issued drawings must bear the seal of a licensed architect, the appellees argue that in practice many qualified architects work under the aegis of licensed architects without being licensed themselves.

The language of section 13–80–127 refers to "any architect." The protection of the statute is not explicitly limited to licensed architects, but extends to engineers, contractors, and inspectors who provide services for the construction of improvements to real property. Thus, we find no basis to conclude that architects in the position of Pei are to be excluded. Moreover, the timing of the limitation period in the statute runs from the date of the substantial completion of the structure. Since Pei was an architect licensed in this state at the time of substantial completion in 1960, we hold that the statute was directly applicable to him.

In conclusion, we hold that since more than ten years had elapsed after substantial completion of the building before this lawsuit was filed, the architects are immune from suit according to section 13–80–127, *supra.*

The judgment of the trial court granting summary judgment is affirmed.

DUBOFSKY and QUINN, JJ., dissent.

DUBOFSKY, Justice, dissenting:

Because the ten year statute of limitations for actions against an architect under section 13–80–127, C.R.S.1973 does not apply to damages for wrongful death, I respectfully dissent from the majority opinion.

At the time the plaintiff filed a cross-claim against I.M. Pei & Partners, section 13–80–127 applied to "[a]ll actions against any architect, contractor, engineer, or inspector brought to recover damages for *injury to person or property* caused by the design, planning, supervision, inspection, construction, or observance of construction of any improvement to real property...." (emphasis added). In 1979, after this action was instituted,[1] the Colorado General Assembly amended section 13–80–127 to include recovery of damages for wrongful death.[2] When a statute is amended, there

---

In their reply brief the appellants for the first time raised the argument that a wrongful death action should not be subject to the time constraints of section 13–80–127, instead urging this court to adopt the rationale expressed in *McClanahan v. American Gilsonite Co., supra.* This view is more fully set out in the dissents of Justice Dubofsky and Justice Quinn. As this contention was first raised in the reply brief, and was not properly before this court based upon the record made in the lower court, we decline to discuss it.

1. The plaintiff's wife died on May 17, 1977; the plaintiff filed an *action against the Hilton Hotels Corporation on May 16, 1978; and on May 14, 1979, the plaintiff filed a cross-claim against the third-party defendants, the architects. The

amendment to section 13–80–127, C.R.S.1973 (1982 Supp.) was effective on July 1, 1979.

2. Section 13–80–127, C.R.S.1973 (1982 Supp.) provides:

"(1)(a) All actions against any architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within two years after the claim for relief arises, ... but in no case shall such an action be brought more than ten years after the substantial completion of the improvement to the real property....

(c) Such actions shall include any and all actions in tort, contract, indemnity, or contri-

is a presumed intent to change the law. *People v. Hale,* 654 P.2d 849 (Colo.1982). Since 1877, damages for wrongful death in Colorado have been treated separately from damages for injury to person or property. Section 13–21–201, *et seq.,* C.R.S.1973; *Crownover v. Gleichman,* 194 Colo. 48, 574 P.2d 497 (1977). The legislative extension of the architects' statute of limitations to include actions involving wrongful death is a substantive amendment and not one merely attempting to clarify the meaning of the statute. *See People v. Hale, supra.* Therefore, I conclude that at the time this action arose, the architects' ten year statute of limitations did not apply and that section 13–80–127 did not bar the plaintiff's wrongful death claim.

The appropriate statute of limitations was found in section 13–21–204, C.R.S.1973, which provided: "All actions [for wrongful death] shall be brought within two years from the commission of the alleged negligence resulting in the death for which suit is brought."[3] This Court interpreted section 13–21–204, C.R.S.1973 to mean that the wrongful death statute of limitations did not commence to run until a latent defect caused the injury which resulted in death. *DeCaire v. Public Service Company,* 173 Colo. 402, 479 P.2d 964 (1971); *but see Crownover v. Gleichman, supra.* The plaintiff here filed his action for damages for wrongful death within the two year limitation in section 13–21–204, C.R.S.1973. *See McClanahan v. American Gilsonite Company,* 494 F.Supp. 1334, 1337 (D.Colo.1980). I believe that the district court erred in ruling that I.M. Pei & Partners are immune from suit.

I am authorized to say that Justice QUINN joins in this dissent.

QUINN, Justice, dissenting:

I join in Justice Dubofsky's dissent and add a few additional observations about section 13–80–127(1), C.R.S.1973. This statute, as pertinent here, states that "[a]ll actions against any architect ... for injury to person or property caused by the design ... of any improvement to real property shall be brought within two years after the claim for relief arises ... but in no case shall an action be brought more than ten years after the substantial completion of the improvement to the real property ...." The critical issue in this case, as I see it, is whether the legislature in enacting this statute in 1969 intended to include within the ten year period of limitation a statutory claim for wrongful death under 13–21–202, C.R.S.1973. Although the plaintiff first asserted the inapplicability of section 13–80–127 to wrongful death actions in his reply brief, I believe the issue should be addressed. The effect of not addressing it affects the substantial rights of the plaintiff, C.A.R. 35(e), and, in my opinion, the issue is implicit in the trial court's grant of summary judgment for the defendant.

I believe the statutory language of section 13–80–127, which expressly applies to all actions "for injury to persons or property," manifests a clear legislative intent not to include an action for wrongful death in the ten year limitation period. It has long been the law in this state that a cause of action for wrongful death is not based upon a "survival theory," section 13–20–101(1), C.R.S.1973; *see Espinoza v. O'Dell,* 633 P.2d 455 (Colo.1981); *Publix Cab Co. v. Colorado National Bank,* 139 Colo. 205, 338 P.2d 702 (1959), but rather is an entirely new cause of action which comes into being at death

bution or other actions for the recovery of damages for:

(I) Any deficiency in the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property; or

(II) Injury to real or personal property caused by any such deficiency; or

(III) Injury to or wrongful death of a person caused by any such deficiency."

3. The Colorado General Assembly amended section 13–21–204, applicable to cases commenced on or after June 7, 1979, as follows: "All actions [for wrongful death] shall be brought within two years after the commission of the alleged negligence resulting in the death for which suit is brought or within one year after the death for which suit is brought, whichever is later."
Section 13–21–204, C.R.S.1973 (1982 Supp.).

and only then vests the surviving spouse with an actionable claim for relief. The separate and independent nature of this claim was recognized in *Fish v. Liley*, 120 Colo. 156, 160, 208 P.2d 930, 932 (1949), where a surviving wife sued for the wrongful death of her husband:

> "Properly considered ... the Death Act is not a survival statute. This is true for the reason that the cause of action created by this statute is separate and distinct from the action which the deceased would have for personal injuries had he survived. The wife's action is rooted in the statute itself and the elements of her damage are essentially different from those proper for consideration in a personal injury action to which her injured husband would have been entitled if death had not ensued."

Thus, in the instant case, the death of Dr. Yarbro's wife created a claim in Dr. Yarbro "which is essentially different from any liability chargeable to the tort-feasor prior to the death ...." *Fish v. Liley*, 120 Colo. at 162, 208 P.2d at 933. We must presume that the legislature was aware of this construction of the wrongful death statute when it enacted section 13–80–127 in 1969. If, at that time, the legislature intended the ten year limitation period to extinguish a wrongful death claim, it hardly would have drafted the limitation provisions in terms of "[a]ll actions ... to recover damages for injury to person or property."

Excluding wrongful death actions from the 1969 version of section 13–80–127 has strong support in logic. A contrary construction results in extinguishing a claim before it ever comes into being. In enacting a statute it is presumed that the legislature intends a just and reasonable result. Section 2–4–201(1)(c), C.R.S.1973 (1980 Repl.Vol. 1B). The abrogation of a statutory claim for wrongful death before the claim itself has come into being is hardly the type of result which might reasonably be inferred from legislative silence on the matter. The distance from legislative silence to statutory nullification of a claim is far too long to cover in a single step.

I would reverse the summary judgment and remand the case to the trial court for further proceedings on the plaintiff's claim against the architects.

I am authorized to say that Justice DUBOFSKY joins me in this dissent.