# PAUL FERM, Respondent, v. GREAT NORTHERN RAILWAY COMPANY, a Corporation, Appellant.

(207 N. W. 39.)

**Negligence — failure of proof of negligence requires dismissal.**

1. In an action for damages for injury on account of the alleged negligence of the defendant the failure of proof of negligence entitles the defendant to a dismissal of the action.

**Negligence — question of law where but one conclusion can be drawn from facts; driver held guilty of negligence proximately causing death of horses.**

2. Following Haugo v. Great Northern R. Co. 27 N. D. 268 and Heckman v. Evenson, 7 N. D. 173. When but one conclusion can reasonably be drawn from conceded facts, the question of negligence is a question of law. Applying this rule to the evidence in the case at bar, the want of ordinary care on the part of the plaintiff is so clear that the only conclusion that can be reasonably drawn therefrom is, that it was the proximate cause of his injury.

Opinion filed January 5, 1926.

Negligence, 29 Cyc. p. 629 n. 46; p. 630 n. 48, 49.

Appeal from the District Court of Ward County, *Moellring,* J. Reversed.

*Dudley L. Nash* and *Murphy & Toner,* for appellant.

It was not necessary for the engineer to keep any lookout for the plaintiff's team and under these circumstances it is patent that there was no negligence. Brookings v. Northern P. R. Co. 47 N. D. 112; Hodgins v. Minneapolis, St. P. & S. Ste. M. R. Co. 3 N. D. 382; Reinke v. Minneapolis, St. P. & S. Ste. M. R. Co. 23 N. D. 187; Corbet v. G. N. R. Co. 22 N. D. 123.

Any act which directly produced or concurred directly in producing the injury. That which produces the event and without which it would not have occurred. 32 Cyc. 745.

*E. R. Sinkler* and *G. O. Brekke,* for respondent.

Note.— (2) Negligence question of law only when facts are undisputed, see 20 R. C. L. 169 et seq.

It is only when the evidence is such that different minds cannot draw different conclusions, either as to the facts or the deductions to be drawn from the facts, that the question of negligence becomes a question of law. Daugherty v. Davis, 48 N. D. 890.

If the facts relating to contributory negligence or to negligence of the defendant are such that different impartial minds might fairly draw different conclusions from them they should be submitted to the jury, and are only for the court, when such that fair-minded men might draw only one conclusion from them. Pendroy v. Great Northern R. Co. 17 N. D. 433; Kunkel v. R. Co. 18 N. D. 367; Hollingshead v. R. Co. 20 N. D. 642.

A judgment notwithstanding the verdict will not be sustained under chapter 63, page 74, Laws 1901, on the ground that there was a failure of proof as to some essential element of the cause of action. It must further reasonably appear that such defect of proof cannot be supplied on another trial. Welch v. N. P. R. Co. 14 N. D. 19; Rieck v. Daigle, 17 N. D. 346, 12 L.R.A.(N.S.) 1022.

Burke, J. The plaintiff alleges in his complaint that in the spring of 1923 he was working for Schultz Brothers who under contract with the defendant was building a grade for double track on the main line of the defendant's railroad, between the town of Epping and Wheelock in this state. That it was necessary for plaintiff to have his team close to and upon the track of defendant's railway while engaged in said work, and that defendant knew that the plaintiff and others were engaged in the building of said grade, and that the defendant negligently and carelessly ran an engine and train of cars at 50 miles an hour over the track where plaintiff was working, without warning, ringing any bell or blowing any whistle, and that when the engine was within a few feet of the place where plaintiff was working, defendant negligently and carelessly blew the engine whistle scaring plaintiff's horses on to the track and two horses were killed and harness destroyed.

The defendant answers, that if a team of horses belonging to the plaintiff was killed at the time and place alleged, that the contributory negligence of the plaintiff was the proximate cause.

The facts are Schultz Brothers had a contract with the defendant to build a grade between the town of Wheelock and the town of Epping

for an additional track so there might be a double track between the two towns which are a little less than 5 miles apart. The plaintiff was working for Schultz Brothers with four horses hitched to a Fresno scraper. There were men and teams working along the grade pretty much all the way to Wheelock and east of the point at which plaintiff was working, and a steam shovel on the west, between plaintiff and Epping. Plaintiff and one Carlson, each with four horses hitched to Fresno scrapers, were working alone at the place where the accident happened, and had been working there for about a week at that place, but had been working at other points on the same grade since April 20, and the accident was on June 18. Plaintiff "put in" two or three summers at the same kind of work and had worked for Schultz Brothers on railroads in Canada and on county work.

The plaintiff states, "That on the day of the accident it was foggy, and there was a hill, you could not see a mile, you could see a train approaching about seven or eight hundred feet." "Accident occurred about 9 o'clock in the morning. The train came from the east about 50 miles an hour. It whistled when it was about 300 feet away. At the time that the train whistled I was holding the scraper for Carlson, I was about 15 or 20 feet away from my team. My team was 15 or 20 feet from the track I rushed and caught them by the heads, I tried to pull them off the track, two of the horses were killed."

On cross-examination, Question, "You saw a train pull in to the station before you were hit?" Ans. "About 15 minutes I saw the smoke of the train when it left Wheelock, but did not know whether it was coming or going. I knew there was a train in Wheelock." Ques. "And in your work you forgot that it was coming along?" Ans. "Well I probably did." Ques. "You knew the train was coming but you forgot about it?" Ans. "Well yes, I know train signals. Did not hear signals given to those working east of us, they were a mile away. I left my team standing on the side of the track and went over to Carlson and was holding his scraper, I might have been 15 or 20 feet from my team when I heard the whistle. They were 15 or 20 feet from the track and moving towards it. At the time I looked, the team was walking towards the track. I made a statement shortly after the accident. Mr. Hogan took it down, I read it and signed it." Plaintiff identifies the statement and says, "It is a true statement otherwise I

53 N. Dak.—35.

would not have signed it." "I wrote the last line, 'I have read this statement and found it correct.' "

On page 24 he is asked, "You knew that horses would not stand if a train was approaching?" Ans. "Yes, when I heard it whistle, I looked up and my horses attached to the Fresno were just about on the track. I saw the smoke at Wheelock." Ques. "So you had knowledge that the train was coming?" Ans. "Yes. I knew one of my horses would not stand when the train was approaching, sometimes he would, sometimes he would not. "And you had that in mind all the time?" "Yes, my horses were hitched to the scraper standing near the track without anybody attending to them." "How far were they from the track when you first noticed?" Ans. "Well they were just about right on the track." Ques. "Just walking on the track? Ans. "There was only one horse on the track. That is the first time, reverse curve is about 1,000 feet from where we were working in a curve. I could have seen the train when it came out of the reverse curve about 1,200 or 1,300 feet away, it was down grade."

The statement which the plaintiff signed and said was true was introduced in evidence without objection and is as follows. "My name is Paul Ferm, my home is at Bowbells, N. D. I have a contract with Schultz Brothers who are doing some grading between Spring Brook and Wheelock, N. D. Our contract is by yardage for filling. On June 18, I was working with John Carlson and we had been hauling a dirt on to the fill by using a Fresno which is a large scale scraper and has a handle on same. We have four horses attached to each Fresno. I had hitched to a Fresno and left them standing about 30 feet from the track on the North side. They were not tied to any thing while I held the Fresno for Mr. Carlson while we leveled off some of the bumps in grade. Mr. Carlson was driving his 4 horses at the time. The first I saw of train coming was when I went to hold the Fresno for Mr. Carlson and the train was then at about Wheelock, which was about 4 miles east of us, I could see the smoke of engine. I was busy working with Mr. Carlson and forgot about the train coming. When I heard and saw the train next I should judge it was about 300 feet east of us and it whistled then but this is the first I had heard it whistle. When I heard it whistle I looked up and my horses attached to the Fresno were just about on the track. The horse on the

left or south side was just over the track or north rail. I ran to them and caught ahold of them and tried to get them off track but could not do so. The engine struck the two on south or left side and killed one out right and injured the other so it had to be killed. I had always watched my horses as I knew they would not stand if train was going by especially if engine was working steam. The train was going about 50 miles per hour. I did not notice my horses start toward the track as my back was turned toward the east. I was probably 50 feet from place where I had left the horses standing. The only time I heard the train whistle was when it was about 300 feet away. One horse was a 7 year dark bay horse. The other was a 9 year old and a sorrel color. They were worth about $300. The harness was badly torn on one horse. The Fresno was damaged some. There are no obstructions except a curve between Wheelock and point of accident. I could see at least a couple of miles to the east, which was the direction from which train came. I have read this statement and found it correct.

"Paul Ferm."

Defendant moved the court to dismiss the action for the reason that the testimony did not show a cause of action, which was overruled by the court. Witness Wickham for the defense stated, Locomotive Engineer for eighteen years, and was engineer on train when the accident happened, about 2 miles from Epping. "It was a freight train of fifty-five cars I knew the work was going on I gave the warning signals to the workman, whistled at all crossings and two short whistles. About a quarter of a mile east of where this team was working there is a crossing and another one about 300 feet, I whistled at both crossings. The accident happened right on the curve, I did not whistle on the curve I whistled at the crossing about 300 feet from the team. The team was standing when I first saw them, they started along the track in the same direction the train was going, I figured there was a man in charge of them. I gave the danger signal just before I struck them, several short blasts of the whistle, stop alarm we call it. They were moving along the track when I got within 300 feet of them, and then they turned and went on the track, we did not have time to stop the train. I applied the air when I rounded the curve and saw the team start, the speed of the train was reduced to about 15 miles an hour. There was a curve about 1,200 feet to the east, I could not see the men until I

came around the curve, I whistled at the crossing just above the curve about 300 feet east of the curve, that would be about 1,500 feet from where the men were working. It is a rule to whistle at curves and crossings, and I whistled also about 2,700 feet from where the men were working. It is a rule to give warning signals to men working on the road, I could not stop the train, when they turned on the track, I was about 150 feet from them then. I whistled about 300 feet from the curve the crossing being near the curve, the whistle for crossing was also right distance for the whistle for the curve.

Witness Clone Train Dispatcher, testified, Train was extra west No. 3205—fifty-four cars fifty-one loaded and three empty. Watts fireman, testified, "I did not see the team from my side the whistle was blown for the crossings and curves. I rang the bell all the way from a half mile out of Wheelock I kept hold of the cord to keep it moving. It is worked by air and when started it keeps ringing until you stop it."

The plaintiff bases his right to recover upon the alleged negligence of the defendant in the operation of the train, and it is the contention of the defendant that the negligence of the plaintiff in leaving his team unattended near the railroad was the proximate cause of the accident and therefore he cannot recover. We have quoted the testimony at considerable length and there is no conflict on material matter. It appears from the plaintiff's testimony that he is a young man thirty-two years of age presumably in possession of his faculties. He had been working for a week at the place where his team was killed. He had been working on the grade at other places for several months and he had worked for Schultz Brothers on railroad work in Canada and on county work in North Dakota. He knew that this work was being done on the main line of the Great Northern Railway, and that a large number of trains ran each way over said line every day. He knew that one of his horses was afraid of the cars and would not stand while a train went by. He knew that the train had left Wheelock, and yet with this knowledge he left his own horses standing near the track, without any one attending to them or looking after them in any way, and went to hold the handles of Carlson's scraper. He says, he forgot about the train coming until he heard it whistle and it was then about 300 feet away. He turned to look for the team and it was approaching the track from the North side, the horse on the South side of the team was

inside the north rail of the track. He ran caught them by the heads but could not get them off the track before the train struck and killed two of them. It is agreed that the defendant could not stop its train after the whistle blew, that the train could not be stopped within 300 feet. It was down grade and a very heavy freight train of fifty-one cars and three empties. The defendant knew that men were working on the right of way and the testimony is undisputed that the engineer· blew the whistle for all crossings and curves and wherever there were men at work, and that the air was applied when the engineer saw the team moving towards the track. The fireman kept his hand on the bell cord and kept the bell ringing from a half mile out of Wheelock until after the accident.

It doesn't seem as though the defendant could have done more to warn the workmen of the approaching train, without stopping getting off and looking personally after the workmen and their horses. In· addition to the ringing of the bell and the blowing of the whistle so large a train would make a great deal of noise and unless it was negligence for the defendant to blow the whistle 300 feet from the horses, the defendants negligence is not proven. At the time the engineer blew the whistle, the evidence shows that the horses were approaching the track they evidently would have gone on the track if the defendant hadn't whistled. The bell had been ringing, there was the noise of the train, the horses had started on the track and the whistle was blown to scare them off. That's what the whistle is for. But aside from all question of negligence on the part of the defendant· if the plaintiff's negligence was the proximate cause of the injury he cannot recover. Comp. Laws 1913, § 5948.

"Liability for wilful act of negligence. Every one is responsible not only for the result of his wilful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has willfully or by want of ordinary care brought the injury upon himself." And "Section 7165: Compensation for detriment proximately caused, anticipated or not. For the breach of an obligation not arising from contract the measure of damages, except when otherwise expressly provided by this code, is the amount which will compensate for all the det-

riment proximately caused thereby, whether it could have been antici-
pated or not."

The sections of the statute quoted are declaratory of the common
law, and before the plaintiff can recover it must appear from the evi-
dence that the negligence of the defendant was the proximate cause of
the injury, and that the plaintiff did not by a want of ordinary care
bring the injury upon himself.

There is no proof of the defendant's negligence and under the rule
as stated in the case of Heckman v. Evenson, 7 N. D. 173, 73 N. W.
427. There cannot be two opinions on the question of the contributory
negligence of the defendant. In the case Heckman v. Evenson, the
court said:

"In determining whether or not a plaintiff has been guilty of such
contributory negligence as will defeat a recovery, his action must be
measured by the actions of an ordinarily prudent man, under the same
circumstances and in the same position."

"It is only when but one conclusion can reasonably be drawn from
conceded or undisputed facts that the question of negligence becomes
purely a question of law. If from such facts reasonable men might
draw different conclusions or deductions, then the question of negli-
gence must be left to the jury."

This case is followed and approved in the case of Haugo v. Great
Northern R. Co. 27 N. D. 268, 145 N. W. 1053; Hope v. Great
Northern R. Co. 19 N. D. 438, 122 N. W. 997. There is only one con-
clusion that can be drawn from the facts in the case at bar. No ordi-
narily prudent man would leave his team standing so near the track
when he knew that there was a train coming and only about four miles
away. It was his duty as an ordinarily prudent man to look after his
team and his failure to do so was the proximate cause of the injury.
It is no excuse to say that he forgot about the train coming, under the
circumstances in this case, that only shows a want of proper care.

The judgment of the trial court is reversed and judgment dismissing
the action is ordered to be entered.

CHRISTIANSON, Ch. J., and BIRDZELL, JOHNSON, and NUESSLE, JJ.,
concur.