**Daniel BELLEMARE, Plaintiff and Appellant,**

v.

**GATEWAY BUILDERS, INC. and Anton Rutten, Defendants and Appellees,**

**and**

**Farm Builders, Inc., and Butler Manufacturing Company, Defendants.**

**Civ. No. 870122.**

Supreme Court of North Dakota.

March 7, 1988.

Colleen J. Saande of Dosland, Dosland, Nordhougen, Lillehaug, & Johnson, P.A., Moorhead, Minn., for plaintiff and appellant.

Leo F.J. Wilking of Nilles, Hansen & Davies, Ltd., Fargo, and John M. Colosimo of Greenberg, Colosimo & Patchin, Virginia, Minn., for defendants and appellees.

VANDE WALLE, Justice.

Daniel Bellemare appeals from district court summary judgments dismissing his complaints against Gateway Builders, Inc. (Gateway), and Anton Rutten. We affirm.

In 1979, Bellemare leased Rutten's farmland on a crop-share basis. On October 29, 1979, Bellemare was injured when he fell from a ladder attached to a Butler grain bin on the premises. The bin had been sold to Rutten and erected by Gateway in 1967. Bellemare sued Gateway, Rutten, and others not involved in this appeal, alleging breach of warranty, negligence and strict liability against the corporate defendants, and negligent maintenance of the grain bin and ladder in a defective condition against Rutten.

The trial court denied Rutten's motion for summary judgment. This court was presented with a certified question concerning the duty of care owed by a lessor to a lessee, which we declined to answer. *Bellemare v. Gateway Builders, Inc.*, 399 N.W.2d 308 (N.D.1987). Upon remand, the trial court granted Gateway's and Rutten's motions for summary judgment and judgments of dismissal were entered. Bellemare has raised the following issues on appeal:

"1. Whether the N.D.C.C. § 28–01–44 statute of limitation for personal injury actions arising out of deficient improvements to real property violates the North Dakota Constitution.

"2. Whether the traditional common law standards rendering landlords virtually immune from premises liability are outdated and to be superseded by the single standard that all landowners owe a duty of reasonable care to protect lawful visitors."

*1. Section 28–01–44, N.D.C.C.*

The trial court granted Gateway's motion for summary judgment on the grounds that there was no genuine issue as to any material fact and that Gateway was entitled to judgment as a matter of law under § 28–01–44, N.D.C.C., which provides:

"*28–01–44. Limitation of action— Person submitting plans for improvements to real estate.—1.* No action, whether in contract, oral or written, sealed or unsealed; in tort or otherwise, to recover damages:

"a. For any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property;

"b. For injury to property, real or personal, arising out of any such deficiency; or

"c. For injury to the person or for wrongful death arising out of any such deficiency,

"shall be brought against any person performing or furnishing the design, planning, supervision or observation of construction, or construction of such an improvement more than ten years after

substantial completion of such an improvement.

"2. Notwithstanding the provisions of subsection 1, in the case of such an injury to property or the person or such an injury causing wrongful death, which injury occurred during the tenth year after such substantial completion, an action in tort to recover damages for such an injury or wrongful death may be brought within two years after the date on which such injury occurred, irrespective of the date of death, but in no event may such an action be brought more than twelve years after the substantial completion of construction of such an improvement.

"Nothing in this section shall be construed as extending the period prescribed by the laws of this state for the bringing of any action.

"3. The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant, or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or death for which it is proposed to bring an action.

"4. As used in this section, the term 'person' shall mean an individual, corporation, partnership, business trust, unincorporated organization, association, or joint stock company."

Bellemare argues: (a) that, even if § 28-01-44 is constitutional, summary judgment was inappropriate because a question of fact exists as to whether the grain bin is an improvement to real property or a product; (b) that § 28-01-44 violates Art. I, § 21, N.D.Const., because it unconstitutionally classifies potential plaintiffs and potential defendants; and (c) that § 28-01-44 is a special law in violation of Art. IV, §§ 43 and 44, N.D.Const.

### a. *Improvement or product*

Relying on *Robertson Companies, Inc. v. Kenner*, 311 N.W.2d 194 (N.D.1981), Bellemare asserts that Rutten's grain bin is a "good" under Article II of the Uniform Commercial Code, Ch. 41-02, N.D.C.C., and is not an improvement to real property subject to § 28-01-44, N.D.C.C. The instant case, however, does not involve a question as to whether there was a sale of goods or a rendition of services and *Robertson, supra,* is inapposite.

In enacting § 28-01-44, N.D.C.C., the Legislature did not define the term "improvement to real property." Bellemare asserts that fixture law should be relied upon to define that term and argues that the "manner of annexing the bin to the foundation creates a question of fact as to whether the bin is a fixture or a product." Section 47-01-05, N.D.C.C., provides:

"*47-01-05. 'Fixtures' defined.*—A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs, or imbedded in it, as in the case of walls, or permanently resting upon it, as in the case of buildings, or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws."

This court held, in Syllabus ¶ 1, *Strobel v. Northwest G. F. Mut. Ins. Co.*, 152 N.W.2d 794 (N.D.1967):

"In determining whether a building, which has been purchased and moved on to land of the purchaser, becomes a fixture under Section 47-01-05, N.D.C.C., the court will look to the intention of the purchaser, the manner in which the building is annexed, and its adaptation to the use of the realty."

While also not directly applicable, another statute, § 35-27-01(3), N.D.C.C., dealing with mechanics' liens, might also be helpful in determining what is included within the scope of the statute:

"3. 'Improvement' means any building, structure, erection, construction, alteration, repair, removal, demolition, excavation, landscaping, or any part thereof, existing, built, erected, improved, placed, made, or done on real estate for its permanent benefit."

Pursuant to § 1-02-02, N.D.C.C., "[w]ords used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears." Webster's New

World Dictionary (2d College Ed. 1980) defines "improvement" as " ... 3. a change or addition to land or real property, as a sewer, fence, etc., to make it more valuable."

In our view, it is unnecessary to define the term "improvement to real property" because only one conclusion—that the grain bin involved here is an improvement to real property—can reasonably be drawn from the facts presented to the trial court. The bin is a 10,000–bushel bin anchored to a cement slab by bolts. It was erected on-site in 1967. In erecting the bin, "[t]hey put the roof together first and they'd raise the roof and as they'd raise the roof they'd put the bands on the bottom until they had the 10,000–bushel." The bin is a drying bin with a perforated floor nine inches above the cement slab upon which the bin rests. The bin is part of a grain-handling system which also consists of two additional 10,000–bushel bins, a 3,500–bushel overhead bin, two hopper bins, and a leg. Since the bin was erected in 1967, Rutten had never moved it or removed any of the anchors. Bellemare has not presented any facts indicating that Rutten intended the bin's placement to be anything other than permanent. While it is possible to move the bin from its cement foundation by removing the anchors, under the circumstances presented we are not persuaded that the "manner of annexing the bin to the foundation creates a question of fact as to whether the bin is a fixture or a product."

### b. *Art. I, § 21, N.D.Const.*

Article I, § 21, N.D.Const., provides:

"No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens."

■ Relying on *Hanson v. Williams County*, 389 N.W.2d 319 (N.D.1986), Bellemare asserts that § 28–01–44, N.D.C.C., violates Art. I, § 21, N.D.Const., because persons injured by an improvement to real property within 10 years of the improve-

ment's substantial completion may bring an action against any person performing or furnishing the design, planning, supervision or observation of construction, or construction of the improvement, while a person injured more than 10 years after an improvement's substantial completion may not bring an action.

"[T]he right to recover for personal injuries is an important substantive right" for which the appropriate standard by which to review limiting legislation "is the intermediate standard or the close correspondence test." *Hanson v. Williams County, supra*, 389 N.W.2d at 325. That intermediate standard of review requires a "close correspondence between statutory classification and legislative goals." *Hanson, supra*, 389 N.W.2d at 323, quoting *Arneson v. Olson*, 270 N.W.2d 125, 133 (N.D.1978). Because the statute of repose contained in § 28–01–44, N.D.C.C., also affects the right to recover for personal injuries, we will apply the intermediate standard of review we applied in *Hanson, supra*, to the statute of repose contained in § 28–01.1–02, N.D.C.C.

As in *Hanson, supra*, the question is whether or not there is such a close correspondence between the statutory classification and the legislative goals as would justify the classification. The legislative goal in enacting § 28–01.1–02, N.D.C.C., as indicated in § 28–01.1–01, N.D.C.C., was to alleviate the problem of unaffordable products liability insurance. *Hanson, supra*, 389 N.W.2d at 327–328. We were unable to discern such a "close correspondence between the classification created by § 28–01.1–02, N.D.C.C., and the stated legislative goals as would justify the unequal treatment wrought by this statute" and concluded that it violated Art. I, § 21, N.D. Const. *Hanson, supra*, 389 N.W.2d at 328.

Bellemare argues:

"The Legislature's purpose for passing N.D.C.C. § 28–01.1–02 was the same as its purpose for passing the property improvements statute of limitation, N.D.C.C. § 28–01–44; the classifications established by N.D.C.C. § 28–01.1–02 are virtually identical to the classifications es-

tablished by N.D.C.C. § 28–01–44; and since the same standard of review is also involved, *Hanson, Id.*, controls to require the conclusion that N.D.C.C. § 28–01–44 also violates the constitutional guarantees of equal protection."

We disagree.

Unlike the circumstances surrounding the passage of Ch. 28–01.1, N.D.C.C., the North Dakota Products Liability Act, in 1979, there was no perceived insurance crisis affecting persons engaged in the "design, planning, supervision or observation of construction or construction" of improvements to real property when § 28–01–44, N.D.C.C., was enacted in 1967. The Legislature did not state its goals in enacting § 28–01–44, N.D.C.C., and we are unable to discern from the sparse legislative history of the statute an intention to alleviate any problems relating to the availability or affordability of liability insurance. Rather, it appears that the Legislature's intention was simply to limit what would otherwise be virtually unlimited and perpetual exposure to liability for persons engaged in the "design, planning, supervision or observation of construction or construction" of improvements to real property without eliminating liability entirely by affording a reasonable period within which defects might be manifested and suits brought for injuries caused by defects. Similar legislation for that purpose was enacted in a number of other states at approximately the same time. See *Tabler v. Wallace,* 704 S.W.2d 179 (Ky.1985), and decisions collected therein. See also, *Whiting-Turner Contracting Co. v. Coupard,* 304 Md. 340, 499 A.2d 178 (App.1985), and decisions collected therein.

"Since construction projects generally have expected useful lives of many years or decades, the possibilities for long-term liability for the professional architect or design engineer are enormous." *Yarbro v. Hilton Hotels Corp.,* 655 P.2d 822, 825 (Colo.1982). As stated by the Michigan Supreme Court in *O'Brien v. Hazelet & Erdal,* 410 Mich. 1, 299 N.W.2d 336, 340 (1980):

"The instant legislation was enacted in 1967 in response to then recent developments in the law of torts. The waning of the privity doctrine as a defense against suits by injured third parties and other changes in the law increased the likelihood that persons taking part in the design and construction of improvements to real property might be forced to defend against claims arising out of alleged defects in such improvements, perhaps many years after construction of the improvement was completed. The Legislature chose to limit the liability of architects and engineers in order to relieve them of the potential burden of defending claims brought long after completion of the improvement and thereby limit the impact of recent changes in the law upon the availability or cost of the services they provided."

"The legislative judgment is that construction or design defects are likely to be discovered within a reasonable period after substantial completion of the building." *Yarbro v. Hilton Hotels Corp., supra,* 655 P.2d at 825. Our Legislature has fixed that period at 10 years. The court in *Yarbro* noted that "[o]ver 99% of claims had been brought within ten years after completion." *Yarbro v. Hilton Hotels Corp., supra,* 655 P.2d at 825, n. 4. We conclude that there is a close correspondence between the statutory classification of persons injured within 10 years after substantial completion and persons injured more than 10 years after substantial completion and the legislative goals. That classification, therefore, does not violate Art. I, § 21, N.D.Const.

The dissent contends the statute here is "hardly" distinguishable from that in *Hanson v. Williams County.* But in *Hanson,* because we held there was *no close correspondence* between the statutory classification and the legislative goal, i.e., achieving of affordable insurance, we did not reach the issue of whether or not that goal was a legally permissible goal when weighed against the important substantive right of one injured by a defective product to bring an action claiming compensation for that injury. Here, we discern no illegal

purpose in the goal of obtaining finality resulting in financial security and peace of mind by restricting what would otherwise be virtually unlimited and perpetual exposure to persons engaged in the design, planning, supervision, and observation of construction, or construction of improvements to real property. Nor do we understand Bellemare to argue that such a legislative goal is, of itself, impermissible; rather, he argues that the goal becomes impermissible when weighed against his right to recover damages for his injury. But once a close correspondence between a permissible statutory classification and a permissible legislative goal has been established, the Legislature is well within its authority to balance the competing interests in favor of a ten-year statute of limitations.

The dissent further implies there must be something amiss in accepting, in this instance, *"unstated"* goals whereas in *Hanson* there were *"stated"* goals that were nevertheless found lacking. The dissent does not, however, take issue with the *"unstated"* goals derived from sources other than the statutes. We are not foreclosed from discerning legislative goals simply because a statute is old or because the legislative records were destroyed by fire or not retained. If that were so, many statutes enacted prior to our modern technology would be at risk. In fact, of course, we have determined legislative intent from decisions in other jurisdictions construing similar statutes. E.g., *Herman v. Magnuson*, 277 N.W.2d 445 (N.D.1979) [adopting reasoning of *Fritz v. Regents of University of Colorado*, 196 Colo. 335, 586 P.2d 23 (1978), as to purpose of statutory notice requirements and concluding that it establishes a close correspondence between the statutory classification and the legislative goals].

■ Bellemare also contends that § 28–01–44, N.D.C.C., unconstitutionally classifies potential defendants by extending protection to persons who furnish the design, planning, supervision or construction of an improvement and failing to extend protection to owners or material suppliers. Gateway did not challenge Belle-

mare's standing to raise this issue and we will not decide whether Bellemare has such standing. Differences exist between the different classes of potential defendants:

"... Owners and occupiers of improved property have continuing control of the premises and are responsible for repairs and replacements of damaged or dangerous conditions. Architects, contractors, engineers, and inspectors, on the other hand, in most cases do not have continuing control over or involvement with the maintenance of the improvement after its initial construction....

"In addition, materialmen are in a position distinct from the architect, contractor, engineer, or inspector in that the materialman provides manufactured goods and should be held accountable under the general tort rules governing liability for defects in those products. *See* section 13–80–127.5, C.R.S. 1973.

"'Suppliers and manufacturers, who typically supply and produce components in large quantities, make standard goods and develop standard processes. They can thus maintain high quality control standards in the controlled environment of the factor [sic]. On the other hand, the architect or contractor can pre-test and standardize construction designs and plans only in a limited fashion.'" (Citations omitted.)

*Yarbro v. Hilton Hotels Corp., supra,* 655 P.2d at 827–828.

Assuming, without deciding, that Bellemare has standing to raise this issue, we are not persuaded that Bellemare has clearly shown that the statute's disparate treatment of persons who furnish the design, planning, supervision or construction of an improvement on one hand, and material suppliers or owners of an improvement on the other, contravenes Art. I, § 21, N.D. Const.

■ Bellemare argues that § 28–01–44, N.D.C.C., is a special law in violation of former §§ 43 and 44 of Art. IV, N.D.Const. (formerly Art. II, §§ 69 and 70, Const.

1889), as they existed at the time of his injury:[1]

> "*Section 43*. The legislative assembly shall not pass local or special laws in any of [the] following enumerated cases, that is to say:
>
> \* \* \* \* \* \*
>
> "10. For limitation of civil actions, . . .
>
> \* \* \* \* \* \*
>
> "20. Granting to any corporation, association or individual . . . any special or exclusive privilege, immunity or franchise whatever."
>
> "*Section 44*. In all other cases where a general law can be made applicable, no special law shall be enacted; nor shall the legislative assembly indirectly enact such special or local law by the partial repeal of a general law; but laws repealing local or special Acts may be passed."

For generally the same reasons that it does not violate Art. I, § 21, N.D.Const., the statute also does not violate the foregoing provisions.

Bellemare relies on *Tabler v. Wallace*, 704 S.W.2d 179 (Ky.1985), and *State v. First State Bank*, 52 N.D. 231, 202 N.W. 391 (1924). In *State v. First State Bank*, *supra*, 202 N.W. at 399, this court construed former § 69, N.D. Const. 1889:

> "This provision does not inhibit the Legislature from making reasonable classifications for the purpose of legislation.
>
> "Within the purview of section 69 of the Constitution, a 'special law' is one which relates only to particular persons or things of a class, as distinguished from a 'general law,' which applies to all things or persons of a class (4 Words & Phrases, Second Series, p. 635 et seq.; 36 Cyc. 986; 25 R.C.L. p. 813), . . . The statutory provision under consideration here is neither special nor local; it is general. It operates equally upon all persons and things within the scope of the statute. It operates alike on all persons and property similarly situated. All insolvent banking corporations and all persons in any manner affected are treated alike under like circumstances and conditions. The effect is precisely the same upon all corporations and persons who stand in the same relation to the law. In other words, it operates alike in all cases where the facts are substantially the same."

In our view, § 28-01-44, N.D.C.C., does not relate "only to particular persons or things of a class." *State v. First State Bank, supra,* 202 N.W. at 399. See also, *Whiting–Turner Contracting Co. v. Coupard,* 304 Md. 340, 499 A.2d 178 (App. 1985). "It operates alike on all persons and property similarly situated." *State v. First State Bank, supra,* 202 N.W. at 399. *Tabler v. Wallace, supra,* is unpersuasive because Kentucky's counterpart to Art. IV, § 43, N.D.Const., apparently did not have an interpretive history limiting its reach to "*particular* persons or things of a class." *State v. First State Bank, supra,* 202 N.W. at 399. [Emphasis added.] Reasonable classification does not violate Art. IV, § 43 or § 44, N.D.Const. *Baird v. Rask,* 60 N.D. 432, 234 N.W. 651 (1931); *State v. First State Bank, supra.* See also, *Signal Oil & Gas Co. v. Williams County,* 206 N.W.2d 75 (N.D.1973). The classifications made by § 28-01-44, N.D.C.C., have not been shown to be unreasonable and Bellemare has not clearly shown that the statute violates the "special law" provisions of the North Dakota Constitution.

Bellemare asserted in his reply brief that public policy requires that similar statutes of limitation[2] apply to both products and improvements to real property:

> "The difficulty in determining whether or not a grain bin is a product or an improvement to real property demonstrates the need that a similar statute of limitation apply to both. Public policy

---

1. The prohibition against the enactment of special laws is now contained in Art. IV, § 13, N.D. Const.

2. The "statutes of limitation" involved in this case and in *Hanson v. Williams County,* are actually statutes of repose. Differences between the two types of statutes are explained in *Hanson v. Williams County,* 389 N.W.2d at 321–322.

requires that the right to bring a claim not depend upon the hair splitting decision as to whether or not something is a product or an improvement."

Bellemare barely addressed this matter in his reply brief; Gateway did not address it at all. See Rule 28(c), N.D.R.App.P. The specific question of whether the particular grain bin involved in this case constituted a product or an improvement was not difficult. The general question of whether or not public policy requires similar treatment of products and improvements has not been explored thoroughly enough by the parties to warrant determination.

For the foregoing reasons, we conclude that the trial court did not err in granting Gateway's motion for summary judgment.

### 2. Premises liability

Bellemare argues that, in granting Rutten's motion for summary judgment, the trial court relied upon outdated concepts of premises liability which grant landlords virtual immunity and which should be replaced with a duty of reasonable care.

■ Generally, the common law imposes upon landlords no liability to their tenants or other entrants for injuries due to dangerous conditions on the leased premises. See, e.g., *Newman v. Sears, Roebuck & Co.*, 77 N.D. 466, 43 N.W.2d 411 (1950); Reporter's Note to Introductory Note to Chapter 17, *Restatement (2d) of Property* (1977); Comment *a, Restatement (2d) of Torts*, § 356 (1965). The general rule of nonliability is subject to a number of exceptions. See, e.g., *Restatement (2d) of Property*, §§ 17.1–17.7 (1977); *Restatement (2d) of Torts*, §§ 357–362 (1965). See also, *Anderson v. Kroh*, 301 N.W.2d 359 (N.D. 1981); *Francis v. Pic*, 226 N.W.2d 654 (N.D.1975); *Huus v. Ringo*, 76 N.D. 763, 39 N.W.2d 505 (1949). At common law, an owner or occupant's duty to entrants often turns on the status of the entrant, such as invitee, licensee, or trespasser. See, e.g., *O'Leary v. Coenen*, 251 N.W.2d 746 (N.D. 1977); *Sendelbach v. Grad*, 246 N.W.2d 496 (N.D.1976); *Johanson v. Nash Finch Co.*, 216 N.W.2d 271 (N.D.1974); *Werth v.*

*Ashley Realty Co.*, 199 N.W.2d 899 (N.D. 1972).

In *O'Leary v. Coenen, supra*, this court abandoned the common-law distinctions between licensees and invitees in measuring the duty of care owed by an occupier of land to such entrants. We held that an occupier of land owed a duty to entrants, whether they be licensees or invitees, to act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances. We specifically did not abandon the common-law category of trespassers because we recognized that there was a "significant difference between the status of one who trespasses on the property of another and one who enters under some color of right to do so." *O'Leary v. Coenen, supra*, 251 N.W.2d at 751 n. 6. We did not address a landowner's duty to a tenant. Bellemare has urged that we extend the rationale of *O'Leary v. Coenen* and abandon the common-law category of tenants in measuring a landowner's duty and adopt a single standard of reasonable care. We decline to do so.

A tenant is more than just an entrant. The relationship of landlord and tenant usually arises when one gives to another temporary possession and use of real property for a reward. *Huus v. Ringo, supra*, 39 N.W.2d at 511. As to dangerous conditions, a tenant has opportunities for discovery and control which often are not available to trespassers, licensees, and invitees, and which may rival or exceed those of the landowner. Those opportunities suffice to distinguish tenants from other entrants, just as trespassers are different from licensees and invitees.

Our decision in *O'Leary v. Coenen* to abandon the common-law categories of licensees and invitees was based upon a number of factors, some of which are of little or no moment when dealing with tenants:

"Our decision to abandon the common law approach to questions involving premises liability is based on the same factors relied upon in other jurisdictions, namely: the common law categories have no logical relationship to the exercise of

reasonable care for the safety of others; human safety is of greater importance than a land occupier's unrestricted freedom; the common law distinctions are difficult to apply to specific factual situations; the use of the common law categories forecloses a jury from applying changing community standards to the duty owed by an occupier of premises to entrants thereon; the common law categories can mislead a jury; and the common law category distinctions and exceptions make the use of the common law categories complex, confusing, and inequitable." *O'Leary v. Coenen, supra,* 251 N.W.2d at 752. Tenants are relatively easy to recognize and the category is relatively easy to apply, not likely to mislead a jury, and the distinctions between tenants on the one hand and trespassers, licensees, and invitees on the other are not complex, confusing and inequitable. A tenant's opportunities for discovery and control of dangerous conditions, when compared with those of trespassers, licensees and invitees, have a logical relationship to the exercise of reasonable care on the part of landlords and tenants for the safety of themselves and others. A landowner's transfer of possession to a tenant often diminishes the owner's opportunities for discovery and control of dangerous conditions that may arise on the premises. We see no reason at this time, under the circumstances presented, to abandon the common-law category of tenants to measure a landlord's duty of care.

Bellemare has drawn our attention to several opinions from other jurisdictions adopting a single standard of ordinary or reasonable care. None of them, however, imposed such a duty upon a landlord to a tenant in a situation involving a nonresidential lease. Perhaps residential leases are sufficiently different from other leases as to warrant different treatment. See *Pagelsdorf v. Safeco Ins. Co. of America,* 91 Wis.2d 734, 284 N.W.2d 55, 58–60 (1979) [noting that "The general rule of nonliability was based on the concept of a lease as a conveyance of property and the consequent transfer of possession and control of the premises to the tenant," but that "[t]he

modern-day apartment lease is regarded as a contract, not a conveyance"]. We are not faced with a residential lease, however, but an agricultural lease.

■ Bellemare argues that § 9–10–06, N.D.C.C., should be applied to landlords. That section provides:

"*9–10–06. Willful acts and negligence—Liability.* Everyone is responsible not only for the result of his willful acts but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person. The extent of the liability in such cases is defined by sections 32–03–01 to 32–03–19, inclusive."

Prior to its amendment in 1973, § 9–10–06 provided:

"*9–10–06. Willful acts and negligence—Liability.*—Every one is responsible not only for the result of his willful acts but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter, willfully or by want of ordinary care, has brought the injury upon himself. The extent of the liability in such cases is defined by sections 32–03–01 to 32–03–19, inclusive."

Generally, as discussed earlier in this opinion, the common law imposes upon landlords no liability to their tenants for injuries due to dangerous conditions. This court held, in *Ferm v. Great Northern Ry. Co.,* 53 N.D. 543, 207 N.W. 39, 42 (1926), that the predecessor to § 9–10–06, N.D. C.C., prior to its amendment in 1973 was "declaratory of the common law." Bellemare argues, however, that the present version of the statute "should be constructed to give all landowners the duty to use reasonable care." This court considered the application of the former provisions of § 9–10–06, N.D.C.C., in *Francis v. Pic,* 226 N.W.2d 654, 658 (N.D.1975):

"We have also examined Section 9–10–06, N.D.C.C., but do not find it particularly helpful because the language as it existed at the time of the accident was construed by this court in *Ferm v. Great*

*Northern Ry. Co.*, 53 N.D. 543, 207 N.W. 39 (1926), to be declaratory of the common law, except to note that this law is in harmony with the proposition that the use to which property is put has a material bearing as to which rule of law should be applied. In passing, we should note that this section was amended in 1973 along with the adoption of the comparative negligence law, which may require a re-examination of prior analyses and constructions of this section. It could well constitute a harbinger of change."

The only change made to § 9-10-06, N.D.C.C., in the 1973 amendment was the deletion of the words "except so far as the latter, willfully or by want of ordinary care, has brought the injury upon himself" to correspond with the adoption of comparative negligence in § 9-10-07, N.D.C.C. That deletion does not warrant now applying the statute to landlords when it was inapplicable before the deletion. We recognize that California courts have applied a similar statute to landlords. See *Brennan v. Cockrell Investments, Inc.*, 35 Cal. App.3d 796, 111 Cal.Rptr. 122 (1973); *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal. Rptr. 97, 443 P.2d 561 (1968). This court, however, earlier held that § 9-10-06, N.D. C.C., was declaratory of the common law and it has never been applied to govern the standard of care owed by a landlord to a tenant. "Where a statute has been in existence for a long time, it will be presumed that the Legislature, at all times, has been aware of the meaning attached to the language of the law by the courts." *Krise v. Gillund*, 184 N.W.2d 405, 408 (N.D.1971). Under the circumstances presented, we are not now disposed to change the meaning attached to the statute.

Other contentions raised with regard to the issue of premises liability are without merit and will not be addressed.

We conclude that the trial court did not err in granting Rutten's motion for summary judgment.

The judgments are affirmed.

ERICKSTAD, C.J., and LEVINE, J., concur.

GIERKE, J., concurs in the result.

MESCHKE, Justice, concurring and dissenting.

I concur that this case carries no cogent reason to change the measure of a landlord's duty of care. But, that should not make the landlord-tenant classification inflexible. Ordinarily, tort liability of a landlord has little to do with the contract of tenancy. Generally, a landlord should be liable for lack of ordinary care, the standard of conduct for "everyone." NDCC 9-10-06.

I also concur that there is no material issue of fact about whether this grain bin was a product or an improvement to real property. *See Pacific Indemnity Company v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548 (Minn.1977). But, in reality, that difference shouldn't be significant in assessing the constitutionality of statutes of repose. Statutes of repose are alike in arbitrarily barring claims before they accrue and in disregarding fault or wrongdoing. Statutes of repose should be scrutinized similarly, not differently.

I respectfully dissent from the conclusion that NDCC 28-01-44 is constitutional. In my view, this statute is hardly distinguishable from the one invalidated in *Hanson v. Williams County*, 389 N.W.2d 319 (N.D. 1986).

The majority opinion has inverted the analytical instruments for examining such a statute, diminishing the importance of human life and safety and enlarging an unarticulated need for financial tranquility among designers and builders. *Hanson* began the inspection with a clearer focal point:

"While there are economic consequences ... underlying the legislation in question, we believe our focus must be on the individuals affected. We are unwilling to view human life and safety as simply a matter of economics. Therefore, we agree ... that the right to recover for personal injuries is an important substantive right. [citation omit-

ted.] We conclude that the appropriate standard of review to be applied ... is the intermediate standard or the close correspondence test." *Hanson, supra,* 389 N.W.2d at 325.

In *Hanson,* we could not discern a close correspondence between the statutory classification created for makers of products and the *stated* legislative goals that would justify unequal treatment of some carelessly injured. Accordingly, we concluded that statute of repose violated Art. I, § 21 of our N.D. Constitution.

Today, the majority opinion professes to begin with an intermediate standard of review requiring a close correspondence between statutory classification and legislative goals. But, while *Hanson* rejected a *stated* legislative goal of affordable liability insurance for those who make products, the majority accepts an *unstated* legislative intention of limiting financial liability of those who make improvements to real property. The difference in legislative goals is hardly perceptible; the difference in judicial approach is palpable.

In marking a schizophrenic difference between a statute of repose for makers of improvements and one for makers of products, today's majority opinion draws heavily on *Yarbro v. Hilton Hotels Corp.,* 655 P.2d 822 (Colo.1982). Justice Gierke pointed out in *Hanson, supra,* 389 N.W.2d at 323, footnote 10, that the Colorado court used a rational basis test to scrutinize their statute of repose. Similarly, *O'Brien v. Hazelet & Erdal,* 410 Mich. 1, 299 N.W.2d 336 (1980), quoted by the majority to rationalize today's decision, used a rational basis test, not a close correspondence one. Today's use of *Yarbro* and *O'Brien* belies an intermediate or close correspondence scrutiny.

I agree that a reasonable classification does not violate Art. IV, § 43 and § 44, N.D.Constitution. I cannot approve this classification treating designers and contractors differently than materialmen. Like the differentiation between products and improvements, the difference between materialmen and makers is more whim than whit. Such undifferentiated particu-

larity in limiting civil actions (subsection 10) and granting special immunities (subsection 20) is precisely the thing prohibited. *See Pacific Indemnity Company v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548 (Minn.1977).

Following *Hanson v. Williams County, supra,* I would conclude that NDCC 28–01–44 is unconstitutional. Therefore, I respectfully dissent.