**VANTAGE, INC. d/b/a Carousel Village; Hamby Creek Enterprises, a limited partnership; and American Hardware Mutual Insurance Company, Plaintiffs and Appellees,**

v.

**CARRIER CORPORATION, d/b/a Day & Night Co., Defendant and Appellant.**

**Civ. No. 900264.**

Supreme Court of North Dakota.

March 19, 1991.

Donald A. Negaard of Pringle & Herigstad, Minot, for plaintiffs and appellees Vantage, Inc. and Hamby Creek Enterprises.

Farhart, Lian, Maxson, Howard, Sorensen & Louser, Minot, and David S. Evinger of Robins, Kaplan, Miller & Ciresi, Minneapolis, Minn., for plaintiff and appellee American Hardware Mut. Ins. Co.

Nevin Van de Streek of Eaton, Van de Streek & Ward, Minot, for defendant and appellant.

VANDE WALLE, Justice.

Carrier Corporation d/b/a Day & Night Co. [Carrier], appealed from a judgment awarding Hamby Creek Enterprises [Hamby Creek] $18,075, Vantage, Inc., d/b/a Carousel Village [Vantage] $364,749, and American Hardware Mutual Insurance Company [American Hardware] $620,-071.05. We affirm.

Hamby Creek owned a building in Minot, North Dakota, which it leased to Vantage for a furniture and appliance store. American Hardware insured the premises and its contents against fire. On the evening of November 8, 1986, a fire caused over one million dollars in property damage to the premises. The Minot Fire Marshal determined that a faulty rooftop furnace, which had been installed in 1974, caused the fire. Carrier had designed and manufactured the furnace. Hamby Creek, Vantage, and American Hardware sued Carrier for property damage alleging theories of strict liability and negligence.

Carrier moved for judgment on the pleadings, asserting that the statute of repose in Section 28–01.1–02, N.D.C.C.,[1] barred the plaintiffs' action because the property damage occurred more than eleven years after the furnace had been manufactured and more than ten years after it had been purchased. Citing our decision in *Hanson v. Williams County*, 389 N.W.2d 319 (N.D.1986), that Section 28–01.1–02, N.D.C.C., violated the equal protection clause of the North Dakota Constitution,[2] the trial court denied Carrier's motion.

Carrier thereafter moved for judgment on the pleadings, contending that the statute of repose in Section 28–01–44, N.D. C.C.,[3] barred the plaintiffs' action because

1. Section 28–01.1–02, N.D.C.C., provided, in relevant part:
   *"Statute of limitation.*
   "1. There shall be no recovery of damages for personal injury, death, or damage to property caused by a defective product, except as provided in subsections 4 and 5, unless the injury, death, or damage occurred within ten years of the date of initial purchase for use or consumption, or within eleven years of the date of manufacture of a product, where that action is based upon, or arises out of, any of the following:
       "a. Breach of any implied warranties.
       "b. Defects in design, inspection, testing, or manufacture.
       "c. Failure to warn.
       "d. Failure to properly instruct in the use of a product.
   "2. This section applies to all persons, regardless of minority or other legal disability, but does not apply to any claim for relief where the personal injury, death, or damage to property occurs within two years after July 1, 1979.
   "3. If a manufacturer, wholesaler, or retailer issues a recall of a product in any state, modifies a product, or becomes aware of any defect in a product at any time, and fails to notify or warn a user of the product who is subsequently injured or damaged as a result of the defect, the provisions of subsection 1 shall not bar any action against the manufacturer, wholesaler, or retailer based upon, or arising out of, the defect."

2. Art. I, § 21, N.D. Const., provides:
   *"Section 21.* No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens."

3. At the time of the fire, Section 28–01–44, N.D. C.C., provided:
   *"Limitation of action—Person submitting plans for improvements to real estate.*
   "1. No action, whether in contract, oral or written, sealed or unsealed; in tort or otherwise, to recover damages:
       "a. For any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property;
       "b. For injury to property, real or personal, arising out of any such deficiency; or
       "c. For injury to the person or for wrongful death arising out of any such deficiency,
   "shall be brought against any person performing or furnishing the design, planning, supervision or observation of construction, or construction of such an improvement more than ten years after substantial completion of such an improvement.
   "2. Notwithstanding the provisions of subsection 1, in the case of such an injury to property or the person or such an injury causing wrongful death, which injury occurred during the tenth year after such substantial completion, an action in tort to recover damages for such an injury or wrongful death may be brought within two years after the date on which such injury occurred, irrespective of the date of death, but in no event may such an action be brought more than twelve years after the substantial completion of construction of such an improvement.
   "Nothing in this section shall be construed as extending the period prescribed by the laws of this state for the bringing of any action.

the property damage was caused by an alleged design defect in a real estate improvement completed more than ten years before the fire occurred. The trial court denied Carrier's motion, concluding that Section 28-01-44, N.D.C.C., was not applicable to Carrier.

The parties stipulated to the amount of property damage caused by the fire. After a bench trial, the court found that a defective furnace caused the fire and that Carrier was liable for the property damage.

Carrier acknowledges that in *Hanson v. Williams County,* a majority of this court held that, under the intermediate standard of scrutiny, Section 28-01.1-02, N.D.C.C., violated the equal protection clause of the North Dakota Constitution. However, Carrier asserts that the equal protection analysis in *Hanson* is not controlling because the underlying action in that case, a wrongful death claim involving "human life and safety" and "personal injuries," triggered the intermediate standard of scrutiny, whereas the underlying action in this case seeks only economic recovery for property damage. Carrier argues that, for actions involving only economic recovery for property damage, the rational basis test governs equal protection analysis of Section 28-01.1-02, N.D.C.C., and under that test, the statute is constitutional and bars the plaintiffs' action.

In *Hanson,* 389 N.W.2d at 323, we outlined the three standards for reviewing a challenge to a statutory classification under the equal protection clause of the North Dakota Constitution:

> "[T]here is a group of cases involving 'inherently suspect' or 'fundamental interest' classifications which are analyzed under the heightened level of review, strict scrutiny.... The rational basis standard of review is at the other end of the spectrum. When applying this standard of review, a legislative classification will be sustained unless it is patently

arbitrary and bears no rational relationship to a legitimate government interest.... Finally, in *Johnson* [*v. Hassett,* 217 N.W.2d 771,] we noted that there is an intermediate standard of review which, although less clearly defined, required a 'close correspondence between statutory classification and legislative goals'." [Citations and footnotes omitted.]

We analyzed Section 28-01.1-02, N.D.C.C., under the intermediate standard of scrutiny, which requires a close correspondence between a statutory classification and legislative goals:

> "While there are economic consequences for manufacturers and their insurers underlying the legislation in question, we believe our focus must be on the individuals affected. We are unwilling to view human life and safety as simply a matter of economics. Therefore, we agree with the New Hampshire Supreme Court that the right to recover for personal injuries is an important substantive right.... We conclude that the appropriate standard of review to be applied in the present case is the intermediate standard or the close correspondence test." *Hanson, supra,* 389 N.W.2d at 325. [Citations and footnotes omitted.]

A majority of this court held that Section 28-01.1-02, N.D.C.C., violated the equal protection clause of our State constitution because there was not a discernible close correspondence between the statutory classification and the stated legislative goals.

Although the underlying action in *Hanson* was a wrongful death claim, the majority opinion concluded that Section 28-01.1-02, N.D.C.C., violated our State equal protection clause without distinguishing between claims for wrongful death and property damage. Section 28-01.1-02, N.D.C.C., was part of the North Dakota Products Liability Act which focuses on the

"3. The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant, or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate

cause of the injury or death for which it is proposed to bring an action.
"4. As used in this section, the term 'person' shall mean an individual, corporation, partnership, business trust, unincorporated organization, association, or joint stock company."

cause of an injury, *i.e.*, a defective product, and not on the type of injury incurred or the claim for relief. We are not persuaded that, for purposes of equal protection analysis of this statute of repose, we should attempt to distinguish between a claim for wrongful death and a claim for property damage because wrongful death claims also involve pecuniary or economic losses. *Hopkins v. McBane*, 427 N.W.2d 85 (N.D.1988); *Umphrey v. Deery*, 78 N.D. 211, 48 N.W.2d 897 (1951); Sections 32–21–02 and 32–03.2–04, N.D.C.C. *Cf. Dennis v. Higgins*, — U.S. —, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991) [42 U.S.C.1983 language which speaks of deprivations of "any rights, privileges, or immunities secured by the Constitution and laws" does not distinguish between personal rights and property rights. "The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth a 'personal' right...." Quoting *Lynch v. Household Finance Corp.*, 405 U.S. 538, 552, 92 S.Ct. 1113, 1122, 31 L.Ed.2d 424 (1972).] Wrongful death claims and economic losses are so interrelated that parsing Section 28–01.1–02, N.D.C.C., in the manner asserted by Carrier is impracticable. *Cf. Arneson v. Olson*, 270 N.W.2d 125 (N.D.1978) [declaration that part of law is unconstitutional does not require declaration that remainder is void unless all the provisions are so connected and dependent upon each other that it cannot be presumed that the Legislature would have enacted the valid provisions without the unconstitutional provisions]. The rationale for applying the intermediate level of scrutiny in *Hanson* is equally applicable to a claim for property damage, and Carrier's attempt to distinguish *Hanson* on that basis is not persuasive.

We therefore reject Carrier's argument on the applicability of *Hanson* to this case, and we conclude that the trial court correctly determined that Section 28–01.1–02, N.D.C.C., did not bar the plaintiffs' action against Carrier.[4]

■ Carrier also argues that the furnace is a permanent improvement to real estate under Section 28–01–44, N.D.C.C., and therefore the plaintiffs' action is barred by that statute.

In *Bellemare v. Gateway Builders, Inc.*, 420 N.W.2d 733 (N.D.1988), this court concluded that a grain bin was an "improvement to real property" under Section 28–01–44, N.D.C.C., and applied the intermediate standard of scrutiny to an equal protection challenge to that statute. A majority of this court held that that statute was constitutional because there was a close correspondence between the statutory classification and the legislative goals:

"Rather, it appears that the Legislature's intention was simply to limit what would otherwise be virtually unlimited and perpetual exposure to liability for persons engaged in the 'design, planning, supervision or observation of construction or construction' of improvements to real property without eliminating liability entirely by affording a reasonable period within which defects might be manifested and suits brought for injuries caused by defects....

" 'Since construction projects generally have expected useful lives of many years or decades, the possibilities for long-term liability for the professional architect or design engineer are enormous.' ... As stated by the Michigan Supreme Court in *O'Brien v. Hazelet & Erdal*, 410 Mich. 1, 299 N.W.2d 336, 340 (1980):

" 'The instant legislation was enacted in 1967 in response to then recent devel-

---

**4.** We also note that Section 28–01.1–02(3), N.D.C.C., provided an exception to the statute of repose if the manufacturer "modifies a product, or becomes aware of any defect in a product at any time, and fails to notify or warn a user of the product who is subsequently injured or damaged as a result of the defect." There was evidence presented at trial to support the application of that subsection, and the trial court

found that Carrier breached its duty to warn the plaintiffs of the defects in the furnace. Because of our resolution of the other issues raised by Carrier, we need not consider the applicability of that subsection. However, we observe that a trial court's findings of fact are governed by the principles of law applicable to Rule 52(a), N.D. R.Civ.P.

opments in the law of torts. The waning of the privity doctrine as a defense against suits by injured third parties and other changes in the law increased the likelihood that persons taking part in the design and construction of improvements to real property might be forced to defend against claims arising out of alleged defects in such improvements, perhaps many years after construction of the improvement was completed. The Legislature chose to limit the liability of architects and engineers in order to relieve them of the potential burden of defending claims brought long after completion of the improvement and thereby limit the impact of recent changes in the law upon the availability or cost of the services they provided.'

" 'The legislative judgment is that construction or design defects are likely to be discovered within a reasonable period after substantial completion of the building.' ... Our Legislature has fixed that period at 10 years. The court in *Yarbro* noted that '[o]ver 99% of claims had been brought within ten years after completion.' " *Bellemare, supra*, 420 N.W.2d at 737. [Citations omitted.]

We relied on *Yarbro v. Hilton Hotels Corp.*, 655 P.2d 822, 827–828 (Colo.1982), to explain the differences between potential defendants:

" '... Owners and occupiers of improved property have continuing control of the premises and are responsible for repairs and replacements of damaged or dangerous conditions. Architects, contractors, engineers, and inspectors, on the other hand, in most cases do not have continuing control over or involvement with the maintenance of the improvement after its initial construction....

. " 'In addition, materialmen are in a position distinct from the architect, contractor, engineer, or inspector in that the materialman provides manufactured goods and should be held accountable under the general tort rules governing liability for defects in those products. *See* section 13–80–127.5, C.R.S.1973.

" ' "Suppliers and manufacturers, who typically supply and produce components in large quantities, make standard goods and develop standard processes. They can thus maintain high quality control standards in the controlled environment of the factor[y]. On the other hand, the architect or contractor can pre-test and standardize construction designs and plans only in a limited fashion." ' (Citations omitted.)" *Bellemare, supra*, 420 N.W.2d at 738.

Carrier argues that *Bellemare* is dispositive because there is no reason to apply Section 28–01–44, N.D.C.C., to the architect of a building and not to the designer of a building's component parts. Carrier asserts that there is "no difference under NDCC 28–01–44 between the ladder attached to the grain bin in *Bellemare* and the furnace attached to a building in the instant case. Each is integrated permanently into a real property improvement and each is essential to the function and use of the building of which it is a part."

Carrier's argument ignores the rationale in *Bellemare* for the classification of potential defendants protected by Section 28–01–44, N.D.C.C. As the majority opinion explained, that statute was intended to provide a measure of protection to architects, contractors, engineers, and inspectors because "in most cases [they] do not have continuing control over or involvement with the maintenance of the improvement after its initial construction ... and manufacturers, who typically supply and produce components in large quantities, make standard goods and develop standard processes ... [and] can thus maintain high quality control standards in the controlled environment of the factor[y]." *Bellemare, supra*, 420 N.W.2d at 738.

In this case, Carrier designed and manufactured the rooftop furnace, which was an assembly line product placed on the roof of the building. Carrier was not engaged in "performing or furnishing the design, planning, supervision, or observation of construction, or construction of ... an improvement [to real property]" within the meaning of Section 28–01–44, N.D.C.C. The rationale in *Bellemare* indicates that

that statute was not intended to cover manufacturers of products like Carrier.

Moreover, Chapter 28–01.1, N.D.C.C., specifically governs products liability actions against manufacturers. The logical extension of Carrier's argument would emasculate products liability law in cases like this because an action against a manufacturer would be permitted pursuant to the specific law in Chapter 28–01.1, N.D.C.C., but would be barred under Section 28–01–44, N.D.C.C.

We reject Carrier's argument that *Bellemare* is applicable to this case, and we conclude that the trial court correctly determined that Section 28–01–44, N.D.C.C., did not bar the plaintiffs' action against Carrier.

The district court judgment is affirmed.

LEVINE and GIERKE, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of MESCHKE, J., disqualified.

ERICKSTAD, Chief Justice, dissenting in part and concurring in the result.

I respectfully dissent to that part of the majority opinion which holds that section 28–01.1–02, N.D.C.C., did not bar the plaintiffs' action against Carrier. I do so based upon the reasons stated in my dissent in *Hanson v. Williams County*, 389 N.W.2d 319, beginning at 330 (N.D.1986).

Furthermore, I believe this case is, on its facts, distinguishable on the basis that *Hanson* involved a claim for damages for loss of life and this case involves a claim for damages for loss of property.

Notwithstanding, I concur in the result of the majority opinion in this case on the basis of the trial court's findings relative to section 28–01.1–02(3), N.D.C.C. which provides an exception to the statute of repose if the manufacturer "modifies a product, or becomes aware of any defect in a product at any time, and fails to notify or warn a user of the product who is subsequently injured or damaged as a result of the defect."